Cuthbert *v.* Philadelphia, Appellant.

Argued November 12, 1964. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS,
JJ.

reargument refused May 7, 1965.

*Matthew W. Bullock, Jr.,* Deputy City Solicitor, with him *Gerald Gornish,* Assistant City Solicitor, and *Edward G. Bauer, Jr.,* City Solicitor, for City of Philadelphia, appellant.

*Harry A. Takiff,* with him *Martin Greitzer,* and *Takiff and Bolger,* for transportation company, appellant.

*Avram G. Adler,* with him *Freedman, Borowsky and Lorry,* for appellees.

OPINION BY MR. JUSTICE EAGEN, March 23, 1965:

The wife-plaintiff, Lena Cuthbert, fell and was injured while crossing a public street in the city of Philadelphia. An action for injuries on behalf of herself and her husband against the municipality and the Philadelphia Transportation Company followed. A jury returned a verdict against both defendants and awarded the husband $25,000 and the wife $15,000. Motions for judgment notwithstanding the verdict or a new trial were denied, although the court below did reduce the husband's award, through an order of remittitur, to $10,000. Both defendants appealed.

Viewing the evidence in the light most favorable to the plaintiffs, the facts are these: The accident here involved occurred at 12:55 o'clock p.m. on January 17, 1958. The wife-plaintiff, accompanied by her sister, was going from her home in Philadelphia to that of her sister, also in the same city. Alighting from a public conveyance at the corner of Germantown Avenue and Oxford Street, the two women proceeded, with Mrs.

Cuthbert on the curb-side of her sister, east along the north sidewalk of Oxford Street (a one way street with traffic allowed only from a west to east direction) until, after "some distance," they arrived at the "T"-type intersection of Oxford Street and 3d Street (also a one-way street with traffic allowed only from south to north), an uncontrolled intersection.

In the middle of each of these two streets are trolley rails which, by means of curved sections, swing from Oxford Street onto 3d Street. Along the inner side of the easternmost rail of part of this curved section was a depression in the street 3 to 4 inches in depth and 6 1/2 feet in length, characterized by witnesses for the city as a "tripping defect," which defect had existed for a period of at least two years prior to the time of the present incident. Of the length of this depression, 18 inches lay south of the north line of the crosswalk (i.e., within the area of the crosswalk) across 3d Street, an area delimited by extensions of the north building line and north curb line of Oxford Street, and 5 feet lay north of the north line of the crosswalk. The evidence also indicated that there was a metal manhole cover lying between the said trolley rails some 3 feet north of the north line of the crosswalk.

Having to cross this intersection in their journey to the sister's home, Mrs. Cuthbert testified that she casually glanced into the intersection and then looked over her right shoulder to determine whether any traffic was proceeding toward them. Seeing no moving traffic, the two women proceeded to cross the intersection. At this point the traffic control lights at the intersection of Germantown Avenue and Oxford Street changed, and Mrs. Cuthbert, hearing the screech of auto tires, became frightened. One car swung in an arc in front of her and then another swung behind her. Hurrying to complete crossing the street, Mrs. Cuthbert tripped and fell, causing the injuries for which this

suit was instituted. Mrs. Cuthbert testified that before she fell her foot "got caught in the hole by the rail." She also stated she "knew" she had tripped over the depression, described hereinbefore, and identifed this depression on a photographic exhibit. Admittedly, however, she did not see the depression before she tripped, nor immediately thereafter. The first time she saw the depression was at a point of time after she had gone to the hospital for medical attention and returned to "see what it was" that had caused her to fall. (Emphasis added.) She could not, or at least did not, identify the exact portion of the crosswalk (shown by other uncontradicted testimony to be 144 inches wide), upon which she was walking at or before the time of the accident. However, she did state that she and her sister were walking upon the crosswalk together in a straight line, with her sister on the house or north side thereof, and her on the curb-line side. In this connection, it should be noted that the depression extended into the crosswalk for a distance of only 18 inches on the north side thereof.

The determinative issue raised on this appeal by appellant-city is whether or not the plaintiffs failed in their evidence to prove that the defect here involved was the proximate cause of the injuries suffered. We agree that the plaintiffs did not so prove. This issue thus becomes determinative of both appeals. Plaintiffs having failed to prove proximate cause as a matter of law, the case should never have been submitted to the jury (*Idlette v. Tracey*, 407 Pa. 278, 180 A. 2d 37 (1962)), or judgment n.o.v. should have been entered in favor of both defendants.

We think it is clear that either one or the other of the appellants, not at this time determining which one, was negligent in allowing this defect—6 1/2 feet long and 3 to 4 inches in depth—to lie unattended for a period in excess of two years. Granting that neither the

city nor PTC had any greater duty than to maintain this area in a condition reasonably free from irregularities and defects (See, *Bosack v. Pittsburgh Rys. Co.*, 410 Pa. 558, 189 A. 2d 877 (1963), and cases cited therein), even the city's witness characterized this as a "tripping defect" which should have had immediate attention. Considering the particular character of the defect and the testimony of the parties in regard thereto, we cannot say, as a matter of law, that allowing this defect to exist for a two-year period did not constitute actionable negligence. Consequently, the court below properly left this question to be determined by the jury.

Nevertheless, it remains a principle so fundamental as to require no authority that the mere existence of negligence and the occurrence of injury are insufficient to impose liability upon anyone. There remains to be proved the vitally important link of causation: *Flagiello v. Crilly*, 409 Pa. 389, 187 A. 2d 289 (1963) ; *Harrison v. Pittsburgh*, 353 Pa. 22, 44 A. 2d 273 (1945) ; *Philadelphia & R. R. Co. v. Spearen*, 47 Pa. 300 (1864) ; *Drill v. Genetti*, 200 Pa. Superior Ct. 471, 190 A. 2d 185 (1963) ; and, *Hillelson v. Renner*, 183 Pa. Superior Ct. 148, 130 A. 2d 212 (1957). And plaintiff has the burden of proving this link, that the defendant's negligence was the proximate cause of her injury: *Cushey v. Plunkard*, 413 Pa. 116, 196 A. 2d 295 (1964); *Loeb v. Allegheny County*, 394 Pa. 433, 147 A. 2d 336 (1959) ; or of proving evidence from which a reasonable inference arises that the defendant's negligence was the proximate cause of the injury: *Zilka v. Sanctis Construction, Inc.*, 409 Pa. 396, 186 A. 2d 897 (1962). On the other hand, it is not necessary that plaintiff prove with mathematical exactness that the accident could only have been caused in one manner to the exclusion of all other possibilities (*Finney v. G. C. Murphy Co.*, 406 Pa. 555, 178 A. 2d 719 (1962) ), but he must elimi-

nate those other causes, if any, as were fairly suggested by the evidence: *Lescznski v. Pittsburgh Rys. Co.,* 409 Pa. 102, 185 A. 2d 538 (1962); *Foley v. Pittsburgh-Des Moines Co.,* 363 Pa. 1, 68 A. 2d 517 (1949); *Stauffer v. Railway Express Agency, Inc.,* 355 Pa. 24, 47 A. 2d 817 (1946); *Cohen v. Penn Fruit Co.,* 192 Pa. Superior Ct. 244, 159 A. 2d 558 (1960). And it is the duty of the trial court to determine whether or not this requirement has been met in the first instance before the issue can be submitted to the jury: *Idlette v. Tracey,* supra.

In this regard, all that the evidence shows is that upon undertaking to cross the intersection, plaintiff was threatened by approaching vehicles, became frightened, and tripped, serious injuries being caused by the fall. Mrs. Cuthbert was asked specifically on direct examination by her own counsel whether she ever saw the defect which is alleged to have tripped her. In response, she said that she had not seen the defect when she stood on the northwest corner of the intersection, while she was crossing the intersection, nor after she had tripped. She testified that the first time she saw the defect was upon her return, obviously some time later, from the hospital after having received medical attention for her injuries. The only eyewitness other than Mrs. Cuthbert, her sister, was not called upon to testify as to whether or not she had seen the defect. While, during this direct examination, Mrs. Cuthbert testified that at the time she fell and thereafter, she "knew" that it was into this defect which she fell and identified it on an exhibit, there was absolutely no evidentiary fact upon which this conjecture could have been based, nor upon which the jury could have weighed it. The jury may not be permitted to reach its verdict on the basis of speculation or conjecture; there must be evidence upon which its conclusion may be logically based: *Smith v. Bell Telephone Co. of Pa.,*

397 Pa. 134, 153 A. 2d 477 (1959) ; *Schofield v. King,* 388 Pa. 132, 130 A. 2d 93 (1957).

Mrs. Cuthbert may very well have fallen into the defect as she alleged, but she has failed to prove any facts upon which a jury would have been justified in so finding. It is equally possible that she tripped over a properly maintained section of the trolley rail for which, while unfortunate, no liability would have attached. Under her own testimony, the depression was not in her path as she traversed the crosswalk, but rather on that portion thereof upon which her sister was walking.

Appellees distinguish *Reddington v. Philadelphia,* 253 Pa. 390, 98 A. 601 (1916), on the basis that there the plaintiff could not testify as to what had caused her to fall, but that here Mrs. Cuthbert positively stated that she "knew" that the defect had caused her to fall. But, as above pointed out, this was an improper conjecture, without basis in proven facts, and as a result, it rises no higher than plaintiff's inability to testify in *Reddington,* supra. On this point, we feel that *Reddington,* supra, is exactly apposite. Even further, in that case there was no evidence of other possible tripping objects lying about, as is the case here. See also, *Freund v. Hyman,* 377 Pa. 35, 103 A. 2d 658 (1954). Nonetheless, the court held in both of those cases that there was no evidence which would justify a jury in finding that the defect, alleged to have caused the injury, did in fact do so.

Plaintiffs having failed to prove that the defect along the trolley rail was the proximate cause of wife-plaintiff's injuries, the judgments cannot stand.

In view of our conclusion on the question of causation, it is unnecessary to discuss the question of contributory negligence.

Judgments reversed and here entered for both defendants.

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

On January 17, 1958, Mrs. Lena Cuthbert, accompanied by her sister, Mrs. Miller, was walking eastwardly on the northerly side of Oxford Street in Philadelphia, and, when she got to a point where Third Street intersects Oxford Street at right angles, she looked "up and down" and turned her head to observe traffic conditions. Seeing no moving traffic, the two women started across Third Street at the crosswalk traversing that street. After entering the crossing, Mrs. Cuthbert heard the screeching of automobile tires and for a second she "froze." An automobile swung in front of her and then one passed behind her. She then hurried forward across the rest of Third Street, and, in her own words, "my foot got caught in the hole by the rail." She fell and sustained serious injuries which have permanently disabled her. She had to undergo two operations, she now wears a knee-cage and walks with a limp, and her earning power has been ruined.

The "hole" mentioned by Mrs. Cuthbert was a longitudinal depression 3 to 4 inches in depth and 6 1/2 feet long. It sank beneath one of the rails of the street car track and obviously constituted a serious menace to pedestrians. Photographs introduced in evidence showed that it truly was, what witnesses for the city called it, a "tripping defect." This defect had existed for a period of at least two years prior to the accident and there can be no doubt that either, or both, the City of Philadelphia and the Philadelphia Transportation Company were responsible for this threat to life and limb at a crucial street intersection in the city.

The jury returned a verdict in favor of Mrs. Cuthbert and her husband. The majority of this Court has reversed the jury's verdict and has entered judgment in favor of both defendants. In doing so it has, as I view it, accomplished a palpable injustice to Mrs. Cuth-

bert and has inflicted serious damage to the body of the law of torts in Pennsylvania.

Mrs. Cuthbert is the only person who testified as to how she was injured. Her testimony, therefore, stands uncontradicted. The jury believed her and so indicated by its verdict. Mrs. Cuthbert starts across a street, exercising maximum caution, traffic conditions compel her to hurry, she stumbles against a two-year-existing defect in the street and falls. No one, I repeat, no one, contests that the accident happened the way Mrs. Cuthbert described it.

But the majority says that there were other possibilities for her injuries. And one has to admit that there were. A thunderbolt may have fallen from the skies and struck her. An enemy may have thrown a hand grenade at her as she was crossing the street. Her bones may have been as brittle as match sticks and they all snapped at the crucial moment. Anything is possible in this possible world, but the world moves not on possibilities but on probabilities, on likelihoods, and on conclusions built on facts. Every fact in this case, every inference, every application of logic, every rule of cause and effect establish, not only by a preponderance of evidence, but by irrefuted and irrefutable evidence that Mrs. Cuthbert was hurt because of falling into the defect which the City and the Traction Company inexcusably allowed to exist for two years.

The decision of the majority not only bespeaks a palpable injustice, it not only introduces a chaotic influence into the law of evidence and torts, but it also is that kind of a decision that will dishearten young lawyers who will go to the trouble of reading the record. Older practitioners will merely sigh and go on, because they realize the world is an imperfect world, and that, with all its virtues, the legal world has many "tripping defects."

A glance at the record will show that Mrs. Cuthbert testified that she did not see the hole before she

fell. Obviously had she seen this defect and still ran into it, she would have been guilty of contributory negligence. She knew very well, however, where she had fallen and she took a rapid survey of the environment at the time she fell. She could not study it minutely because she was bleeding and in great pain. She went to the hospital for treatment and then she returned to examine thoroughly the scene which had brought her to grief.

The majority apparently was more impressed by the statement made by the City attorney at the trial than by the entire record as to when Mrs. Cuthbert returned to the place of the accident. At the trial, counsel for the City objected to Mrs. Cuthbert's testifying to street conditions and said: "It is too remote. The conditions within several months could vary."

The majority opinion says: "The first time she saw the depression was *at a point of time after* she had gone to the hospital for medical attention." "She testified that the first time she saw the defect was upon her return, *obviously some time later*. (Emphasis supplied.)

The "obviously some time later" inevitably suggests weeks or months later, but, in point of fact, Mrs. Cuthbert *returned to the scene of the accident the same day!* Nor is it in accordance with the record that the first time she saw the defect was upon her return. She testified: "When my sister helped me up and we went to the hospital, *I knew what I tripped over* but all I was thinking about was to get some help for my legs. And then she helped me to the hospital, then after I was treated and the doctor told me to come back the next day I came back to my sister's and we went around and looked, to see what it was, and then we saw the depression in the street. Q. And what did you see? A. I saw this, this hole under the rail, that my foot had went into, my toes. Q. Where was this? A.

In Oxford—Q. Where was this depression? A. On the inside, the west side of the eastern-most rail." (Emphasis supplied.)

The majority opinion says Mrs. Cuthbert could not identify the exact portion of the crosswalk "upon which she was walking at or before the time of the accident." That was never an issue in the case, nor was there any questioning about it. But she did testify, with mathematical precision, the exact spot where she fell. It would not matter where she was prior to the accident if she was at the defectively maintained part of the street when she fell. And in this respect she testified with an engineer's exactness. She drew on the photograph of the street a circle around the spot where she fell. How more specific does a witness need to be? How more specific can a witness be?

And then, out of the infinite nowhere, out of a conjectural nebulosity, out of the opalescent clouds of fanciful theory, the majority opinion says that: "Under her [Mrs. Cuthbert's] own testimony, the depression was not in her path as she traversed the crosswalk."

There is not a word, syllable or punctuation mark in the whole record to support that statement. The sister did not testify and Mrs. Cuthbert specifically stated that she walked in a straight line, and that that straight line lead directly to the spot where she fell, and which is the same exact spot where the defect lurked. How, then, aside from appellate infallibility, may the Majority say that her testimony declares the depression was not in her path as she traversed the crosswalk?

The jury confirmed Mrs. Cuthbert's testimony as to how and where the accident occurred. The trial court confirmed the precise point of the tripping: "The photograph introduced yesterday shows the depression in the street under the rail, two or three inches and that is the place where she tripped. *No question about that at all. That evidence is absolute clear.*

"The evidence on this is perfectly clear, as to the location of the place where she fell, going from one corner to the other corner is where she fell." (Emphasis supplied)

This Court has said innumerable times that the impression of the trial judge as he listens to the testimony, observes the witnesses and feels the immediate atmosphere of the trial, is far more reliable as to what occurred than the impression one gets in a high court distantly removed in time and space from reality. The majority here throws this rule overboard, but offers no reason for its arbitrary jettisoning.

The majority opinion states that: "While, during this direct examination Mrs. Cuthbert testified that at the time she fell and thereafter, she 'knew' that it was into this defect which she fell and identified it on an exhibit, there was absolutely no evidentiary fact upon which this conjecture could have been based, nor upon which the jury could have weighed it."

What higher evidentiary fact could there be than her own, *uncontradicted* testimony that this is where I fell, this is the hole, this is the rail, this is the spot, this is where I broke my leg. A troop of angels could not have testified with more specificity. What is an evidentiary fact? It is testimony in court, it is reliable testimony, and there is not a suggestion, not a zephyr of inference that Mrs. Cuthbert was other than a wholly reliable, credible witness. A court of review must base its conclusions on facts, on evidence, not on suppositions and, least of all, on abstract conclusions which crowd the majority opinion to a tripping point.

After admitting that there was a tortious defect in the street, after admitting that Mrs. Cuthbert fell in the vicinity of that defect, after admitting Mrs. Cuthbert testified as to the exact spot where she said she fell, after acknowledging, as it must, that there was not an iota of evidence to contradict her testimony,

the majority opinion then says that Mrs. Cuthbert cannot recover because she "must eliminate those other causes, if any, as were fairly suggested by the evidence." What were those causes? There were absolutely none except what a lively imagination might conjure up: ghosts, phantoms, invisible cars, incorporeal Martians.

The statement by the majority just quoted defies the unequivocal pronouncement of this Court made in *Smith v. Bell Telephone Co.*, 397 Pa., 134, namely, "It is not necessary, under Pennsylvania Law, that every fact or circumstance point unerringly to liability; it is enough that there be sufficient facts for the jury to say reasonably that the preponderance favors liability."

Also, that the "evidence presented must be such that by reasoning from it, without resort to prejudice or guess, a jury can reach the conclusion sought by plaintiff, and not that that conclusion must be the *only* one which logically can be reached." (Emphasis in original).

The majority's decision in the case at bar would overrule this salubrious, sensible doctrine by declaring that Mrs. Cuthbert can recover only if she can show that her explanation is the *only* one possible in the case. The majority says that it is "possible that she tripped over a properly maintained section of the trolley rail." There is no denying that if facts are to be ignored, logic is to be abandoned, and the law of cause and effect is to be repudiated, Mrs. Cuthbert could have tripped, as the majority opinion gratuitously opines. But such an opinion can be predicated only on an uninhibited guess. And our Court has said, as above quoted, that a jury may not reach its verdict by a "guess." And what a jury may not do, this Court *should* not do.

If the majority is going to guess that Mrs. Cuthbert may have tripped "over a properly maintained

section of the trolley rail," why doesn't it guess she may have been struck by one of the automobiles which admittedly were in the intersection just before the accident? Why not guess that Mrs. Miller pushed her sister Mrs. Cuthbert into the hole or defect? Why not guess that a sudden subsidence of the earth at that point caused Mrs. Cuthbert to fall and be so injured that from then on she must wear a knee-cage? There is no limit to the guessing world.

The fact of the matter is that the law supposedly cited by the majority was expressly repudiated in the case of *Smith v. Bell Telephone,* namely, "The formula that 'the circumstances must be so strong as to preclude the possibility of injury in any other way and provide as the only reasonable inference the conclusion plaintiff advances' is not a correct statement of the rule to be applied by the judge on deciding a motion for either a nonsuit or binding instructions. [This obviously applies also to judgment n.o.v.] If that were the rule what would be the province of the jury? In no case where there was more than one reasonable inference would the jury be permitted to decide. *Insofar as this rule is stated in our cases it is disapproved."*

The decision in the *Smith v. Telephone* case is a towering monument to justice. The decision in this case, compared to the *Smith* monument, is a hole in the ground 6½ feet long, a street car track wide, and at least 300 to 400 feet deep. For every foot of the distance from the bottom of that hole to the summit of the *Smith* monument, I dissent!