ALTRONICS OF BETHLEHEM, INC.
Altronics of Philadelphia, Inc.

v.

REPCO, INC. Appellant.

No. 91–1694.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
Feb. 14, 1992.

Decided Feb. 28, 1992.

Donna M. Miller, Fitzpatrick, Lentz & Bubba, Allentown, Pa., for appellees.

Blake L. Berenbaum, Richman & Rudnick, Philadelphia, Pa., for appellant.

Before GREENBERG, COWEN and SEITZ, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

Defendant Repco, Inc. ("defendant") appeals the order of the district court, after a bench trial, granting judgment in favor of plaintiffs Altronics of Bethlehem, Inc. and Altronics of Philadelphia, Inc. [hereinafter collectively referred to as "plaintiffs"]. The jurisdiction of the district court was based on diversity of citizenship under 28 U.S.C. § 1332 (1988). This court has jurisdiction pursuant to 28 U.S.C. § 1291 (1988).

The findings of fact of the district court will not be disturbed unless clearly erroneous. *Levendos v. Stern Entertainment, Inc.*, 909 F.2d 747, 749 (3d Cir.1990). Conclusions of law, or alleged errors in applying the law to the facts are subject to plenary review. *Id.* On appeal, the evidence will be viewed in the light most favorable to plaintiffs, as the prevailing party. *Rodriguez v. Brunswick Corp.*, 364 F.2d 282, 284 (3d Cir.1966).

## I. FACTS

Plaintiffs are two Pennsylvania corporations engaged in the business of selling and servicing various electronic security and alarm systems to subscribing customers in Eastern Pennsylvania. Defendant manufactures and sells radio equipment and wireless security systems throughout the United States.

Plaintiffs first learned of defendant's products at a trade show where negotia-

tions began. Plaintiffs allege that they informed defendant of their specific security needs and described the locations and terrains of the sites where the second and third systems would be installed. Prior to entering into an agreement of sale, defendant's agent visited the Bethlehem site and stated his belief that the system would be effective in that location with the offset radio frequencies he suggested. Being without expertise on radio operated systems, plaintiffs allege that they relied on defendant's oral and written representations regarding the system and promises of support services, including assistance in obtaining an adequate frequency channel.

Plaintiffs purchased and paid for a total of three systems from defendant. The first was sold by plaintiffs to the Commonwealth of Pennsylvania and is operational. Plaintiffs installed the second in their Bethlehem location to provide service to two of their accounts. It allegedly did not function properly. The third was never installed.

Installation of the second system at the Bethlehem location required plaintiffs to incur additional expenses. Plaintiffs allege that the security system received substantial interference from other frequencies which prevented its use as a reliable alarm system for its subscribers. This was due to the fact that persons monitoring the systems were unable to tell if the signals they received were the result of interference with the frequencies or related to a breach of security at the subscribers' locations. Plaintiffs also received a notice of violation from the Federal Communications Commission ("FCC") due to the interference the second system was creating. Plaintiffs notified defendant of the problems. Another of defendant's agents, Bateman, arrived to examine the installation and to determine the source of the malfunctions. Bateman corrected one problem and suggested further modifications. The system still failed, however, after plaintiffs made the suggested changes.

Ultimately, plaintiffs decided not to install the third system at their Lafayette Hills location. They based their decision on their conclusion that the system was incapable of performing as expected, that defendant was not providing the necessary support services to make the system operational and that incurring further costs was to be avoided. Plaintiffs removed the Bethlehem system and sought satisfaction from the defendant without success. Thereafter plaintiffs attempted to mitigate their damages by advertising one of the systems for sale in a trade magazine. No buyer was found.

Plaintiffs brought this action to recover the purchase price of the two systems, and all incidental and consequential damages. They obtained an Arbitrators' Award in their favor and defendant then demanded a trial *de novo* in the district court. At the conclusion of a non-jury trial, the district court held that under Pennsylvania law, the application of which defendant does not challenge, defendant breached its implied warranties of merchantability and fitness for a particular purpose. 13 Pa.C.S.A. §§ 2314 & 2315 (Purdon 1984). Having decided that plaintiffs were entitled to recover for the breaches of the implied warranties, the court stated that it need not address plaintiffs' express warranty claim. It entered judgment in favor of plaintiffs for the costs of both systems and consequential damages. This appeal followed.

## II. DISCUSSION

### A. Breach of the Implied Warranties

The district court concluded that the defendant breached its implied warranties of merchantability and fitness after finding that the system generally failed to operate in a reliable manner at plaintiffs' Bethlehem location. In support of its conclusion, the district court stated that it need not identify any specific defect in order to show that the equipment did not perform as goods of its kind should. Defendant asserts that the district court misconstrued the law relating to the amount of evidence required to establish a breach of the implied warranties. Specifically, defendant contends that plaintiffs failed to prove by a preponderance of the evidence any defect

in the equipment it manufactured and supplied.

■ Both the implied warranty of merchantability and the warranty of fitness for a particular purpose arise by operation of law and serve to protect buyers from loss where the goods purchased are below commercial standards or are unfit for the buyer's purpose. *Vlases v. Montgomery Ward & Co.*, 377 F.2d 846, 849 (3d Cir. 1967). In order to be merchantable, goods must be "fit for the ordinary purposes for which such goods are used." 13 Pa.C.S.A. § 2314(b)(3). The warranty of fitness for a particular purpose is more exacting. It requires that the seller had reason to know of the buyer's particular purpose at the time of contracting and that the buyer was relying on the seller's expertise. In that case, the goods are implicitly warranted to be fit for that particular purpose. 13 Pa. C.S.A. § 2315. To establish a breach of either warranty, plaintiffs must show that the equipment they purchased from defendant was defective.

■ One way to demonstrate a defect is by the submission of circumstantial evidence. *Greco v. Bucciconi Engineering Co.*, 407 F.2d 87, 89–90 (3d Cir.1969); *MacDougall v. Ford Motor Company*, 214 Pa.Super. 384, 257 A.2d 676, 679–80 (1969), *overruled by implication on other grounds, REM Coal Co., Inc. v. Clark Equipment Co.*, 386 Pa.Super. 401, 563 A.2d 128 (1989). Under Pennsylvania law a product may be found defective if it "functioned improperly in the absence of abnormal use and reasonable secondary causes." *Greco*, 407 F.2d at 89–90. We believe that plaintiffs were required to shoulder the burden not only of demonstrating a malfunction, but of negating abnormal use and other causes. *Id.* at 89–90 & n. 3; *see also Brill v. Systems Resources, Inc.*, 405 Pa.Super. 603, 592 A.2d 1377, 1379 (1991). Therefore, in order to carry their burden plaintiffs were required to show: (1) that the product malfunctioned; (2) that plaintiffs used the product as intended or reasonably expected by the manufacturer; and (3) the absence of other reasonable secondary causes.

■ The district court made several findings of fact regarding the improper functioning of the system. It found that plaintiffs experienced communications failures after installation; that there were major problems with the transmitter; and that after making the modifications suggested by defendant, the system still failed. These findings based on the evidence presented by plaintiffs are supported on the record: (1) by the testimony of Lubsen, the owner and president of plaintiffs, (2) by one subscriber's computer printout showing system failures four out of fifteen days in May of 1987, and (3) by the FCC notice. Under the clearly erroneous standard, it is evident that there was sufficient evidence for the district court to conclude that the system malfunctioned. Thus, plaintiffs met their burden as to the first requirement.

■ Turning to the remaining elements of a breach of warranty claim, defendant does not contend that plaintiffs failed to negate the second burden placed on them, i.e. the possibility of abnormal use of the system. It does argue, however, that the communication failures may be traceable to a number of other factors beyond its control which plaintiffs did not eliminate in their case in chief. Thus, defendant asserts that plaintiffs selected an inferior radio tower, may have improperly installed the system, or failed to make the suggested modifications. Additionally, it states that the frequency assigned by the FCC may have been incompatible with the requirements of a radio security system. Bateman, defendant's agent, also testified as an expert witness to a variety of other factors that could inhibit the effectiveness of the system.

Lubsen, testifying in plaintiffs' case in chief, stated that plaintiffs selected the WFMZ tower after hiring an outside firm to evaluate the options. Each option had its own advantages and disadvantages. Plaintiffs knew that placing the antenna on the WFMZ tower would decrease the effective range of the system due to "line loss." In order to combat this problem, however, plaintiffs utilized a superior cable. Selec-

tion of the WFMZ tower permitted plaintiffs to place the antenna at the highest point available in the area to increase range. Lubsen testified that the decision to use this tower comported with defendant's advice to place the antenna as high as possible. Further, Lubsen explained that the directional placement of the antenna corresponded to the locations of existing and anticipated subscribers.

Lubsen also testified regarding the installation of the system. A specialist installed the antenna on the tower and plaintiffs did the rest of the work themselves after observing Bateman's installation of the Commonwealth system. Lubsen's testimony revealed, and Bateman confirmed, that defendant agreed to check installation and to assist in correcting any existing problems.

The district court could reasonably have inferred that plaintiffs properly installed the system based on the following evidence. First, Lubsen testified that although plaintiffs did not have the expertise to do repairs on such a system, they were accustomed to installation work. Lubsen also testified that he thought that defendant believed that everything appeared to be installed correctly at the tower site based upon what he was told by defendant's agents. Finally, the only problem Bateman identified on the subscriber's premises was the location of the antenna and its angle. Lubsen testified that in accord with Bateman's suggestion, plaintiffs relocated the subscriber's antenna to the top of the building. Thus, the record made by plaintiffs reasonably supports an inference that the failure was not caused by improper installation or an inferior tower.

Defendant also asserts that the offset frequency could have been a likely source of the problem. It informed plaintiffs soon after Bateman's visit that the frequency it had recommended and helped to obtain could be to blame for the malfunctions. The evidence showed plaintiffs' belief that defendant had initiated the process of obtaining a new frequency. Lubsen testified that despite defendant's promise to initiate the process for an alternative frequency, defendant never accomplished the task.

Pennsylvania law does not require that plaintiffs "refute all possible explanations offered by a defendant." *Lenkiewicz v. Lange*, 242 Pa.Super. 87, 363 A.2d 1172, 1175 (1976), *superseded on other grounds, Leaphart v. Whiting Corp.*, 387 Pa.Super. 253, 564 A.2d 165 (1989). In *Cuthbert v. Philadelphia*, 417 Pa. 610, 209 A.2d 261 (1965), the Pennsylvania Supreme Court stated:

> [I]t is not necessary that plaintiff prove with mathematical exactness that the accident could only have been caused in one manner to the exclusion of all other possibilities ... but he must eliminate those other causes, if any, as were fairly suggested by the evidence....

*Id.*, 209 A.2d at 263–64 (citations omitted). Thus, plaintiffs carried their burden of demonstrating the existence of a malfunctioning product in the absence of abnormal use and reasonable secondary causes.

### B. Actual Damages

Defendant next argues that even if some evidence supports the conclusion that the Bethlehem system was defective, the court erroneously included the costs of the third system in the damages award. Defendant urges that plaintiffs failed to produce any evidence to warrant the conclusion that the third system, still in its original packing boxes, was defective. It argues that this is particularly so since the first system, purchased by the Commonwealth from the plaintiffs, operates properly. Defendant contends that given the operative Commonwealth system, it could just as easily be concluded that the third system would function properly.

The district court decided that given the failure of the Bethlehem system, it was not unreasonable for the plaintiffs to choose not to install the third system. That conclusion is supported by the record. Lubsen testified that the Commonwealth system might not be subject to the same problems because of very short distances and flat terrain between the subscriber antennas and the main antenna in that location. It was not unreasonable to infer that due to the differences in distances and terrain, the

Commonwealth and Bethlehem systems were not comparable. Understandably, plaintiffs feared that setting up the third system under conditions similar to those in the Bethlehem location would result in the same failures. Plaintiffs' justified fear that the third system was defective was compounded by the fact that Bateman's inspection of the boxes containing the third system revealed various problems with the inventory. Bateman assured plaintiffs that these problems would be resolved. He further testified that the missing parts were supplied. The inventory problem, however, gave added support to a reasonable belief on plaintiffs' part that problems existed with regard to the third system. Thus, we cannot say that the district court erred in concluding that plaintiffs acted reasonably in deciding not to try to implement the final system. Moreover, plaintiffs' decision not to install the third system comported with the general duty to mitigate damages arising from a breach of contract. *Henry Shenk Co. v. Erie Cty.*, 319 Pa. 100, 178 A. 662, 666 (1935); *Wurlitzer Co. v. Oliver*, 334 F.Supp. 1009, 1011 (W.D.Pa.1971); Restatement, Contracts § 336 (1932).

### C. Consequential Damages

Having concluded that the defendant breached the implied warranties of merchantability and fitness, the district court awarded plaintiffs consequential damages as well as the price of both systems. It did so notwithstanding the liability limitations clause contained in the warranty printed on the defendant's invoice forms. The warranty stated, *inter alia*:

> There are no warranties which extend beyond the description on the face hereof, sellers shall not be liable for any incidental or consequential damages incurred by buyer or anyone else by reason of product defects or failure to conform to specifications. Seller's obligation to repair or replace ... shall be the exclusive remedy.

Defendant argues that the district court erred in including consequential damages in the award in light of the quoted clause. It contends that the Uniform Commercial Code permits a seller to contractually exclude the availability of consequential damages. 13 Pa.S.C.A. §§ 2719(c) and 2715 Comment 3. Defendant attempted to provide for this limitation by including the language on the invoices that were sent to plaintiffs sometime around the time of the shipment of the goods.

Defendant does not challenge the existence of a binding contract. We read defendant's brief, however, as asserting two arguments in support of its claim that the district court's ruling on consequential damages was erroneous. First, defendant claims that the liability limitation language controls because it was an integral part of the parties' contract. This argument appears to be based upon the assumption that written terms sent to the offeror in conjunction with the shipment become enforceable terms of the contract. Secondly, defendant seems to argue that plaintiffs manifested their acceptance of the terms by continued performance under the contract with knowledge of the disclaimer.

■ Under the UCC, an expression of acceptance or written confirmation that includes additional or different terms operates as a legal acceptance of the offer notwithstanding the inclusion of the new terms. 13 Pa.C.S.A. § 2207(a). The statute goes on to provide that, between merchants, the additional terms become part of the contract unless "they materially alter it." *Diatom, Inc. v. Pennwalt Corp.*, 741 F.2d 1569, 1575 (10th Cir.1984) (applying Pennsylvania law); 13 Pa.C.S.A. § 2207(b)(2). Although defendant contends that the terms were an integral part of the contract, it cannot escape the application of 13 Pa.C.S.A. § 2207. *Herzog Oil Field Service v. Otto Torpedo Co.*, 391 Pa.Super. 133, 570 A.2d 549 (1990) (section 2207 applies to the terms contained on an invoice accompanying or following delivery of the goods). Section 2207 clearly dictates how a court must construe these terms.[1] The only question remaining, therefore, is whether the exclusion of the consequential damages from the remedies available to plaintiffs would materially alter the existing contract.

---

**1.** Section 2207 also permits the offeree to expressly condition acceptance upon the offeror's

 Consequential damages are available as a standard remedy for "any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not be prevented by cover or otherwise ..." 13 Pa.C.S.A. § 2715(b)(1). Defendant does not dispute that it had knowledge of plaintiffs' specific needs. Defendant's additional terms would operate to prevent plaintiffs from taking advantage of the remedies otherwise available to them under Pennsylvania law. It follows that inclusion of the additional terms in the contract would constitute a material alteration. *Air Products & Chemicals, Inc. v. Fairbanks Morse, Inc.*, 58 Wis.2d 193, 206 N.W.2d 414, 425 (1973) (applying Pennsylvania law). Thus, the district court correctly held that in order to be bound by the exclusion, the parties must have expressly agreed to it. *Id.*, 206 N.W.2d at 425. Defendant does not suggest that plaintiffs expressly agreed to the new terms. Rather, it seems to assert that plaintiffs' continued performance with constructive or actual knowledge of the disclaimers demonstrated their acceptance of the new terms. This argument is foreclosed by *Step–Saver Data Systems, Inc. v. Wyse Technology*, 939 F.2d 91 (3d Cir. 1991). In that case we held:

> [T]he repeated sending of a writing which contains certain standard terms, without any action with respect to those terms, cannot constitute a course of dealing which would incorporate a term of the writing otherwise excluded under § 2–207.

*Id.* at 104. Therefore, the terms providing for the exclusion of consequential damages did not become part of the contract. The district court properly awarded such damages to plaintiffs.

The judgment of the district court will be affirmed.

---

acceptance of the new terms. 13 Pa.C.S.A. § 2207(a). The fact that defendant evidenced its willingness to go through with the transaction by shipping the goods prevents it from successfully arguing on appeal that its acceptance was conditional. *Diatom*, 741 F.2d at 1577.