**Helen GALULLO, Plaintiff,**

v.

**FEDERAL EXPRESS CORPORATION, Defendant.**

**Civil Action No. 95–6238.**

United States District Court, E.D. Pennsylvania.

June 24, 1996.

---

Ruben Honik, Greitzer and Honik, Philadelphia, PA, for Helen Galullo.

Frank D. Allen, Archer & Greiner, Philadelphia, PA, Robert Von Ohlen, Jr., J. Peter Martin, Kaplan and Begy, Chicago, IL, William J. O'Kane, Jr., Archer and Greiner, Haddonfield, NJ, for Federal Express Corporation.

### MEMORANDUM

ROBERT F. KELLY, District Judge.

Plaintiff, Helen Galullo ("Galullo"), has filed the instant action seeking to recover for injuries she sustained after she allegedly slipped and fell on a letterpack [1] which she

---

1. A letterpack is a thin 9″ by 12″ envelope that Federal Express uses to transport documents.

claims was delivered to her home by Defendant Federal Express Corporation ("Federal Express"). Presently before the Court is Federal Express' Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[2] For the reasons that follow, Defendant's Motion will be granted.

## I. BACKGROUND

The incident which led to the present action occurred on November 16, 1994. At that time, Galullo, who is now 86 years of age, resided with her daughter, son-in-law, and granddaughter in Collegeville, Pennsylvania. On the morning in question, Galullo was home alone and sitting at her kitchen table drinking coffee. At approximately 10:00 a.m. she heard a single loud knock on the side door which separated the kitchen from a two-car garage. The door was located approximately ten (10) to fifteen (15) feet from where she was seated. Galullo immediately went to the door and opened it to see who had knocked. When nobody was present and she heard nothing to indicate who had knocked, she stepped down into the garage and fell when her right foot slipped out from under her. Galullo sustained serious injuries from her fall and was unable to move until approximately 4:00 p.m. when her daughter returned home from work. Galullo subsequently filed the instant action claiming that Federal Express was negligent in delivering the letterpack to her home.[3]

## II. STANDARD

█ Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the

absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The non-moving party cannot rest on the pleadings, but rather that party must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). If the court, in viewing all reasonable inferences in favor of the non-moving party, determines that there is no genuine issue of material fact, then summary judgment is proper. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552; *Wisniewski v. Johns–Manville Corp.,* 812 F.2d 81, 83 (3d Cir.1987).

## III. DISCUSSION

█ In order to establish a prima facie claim for negligence under Pennsylvania law,[4] a plaintiff must show (1) a duty or obligation, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the interests of another. *Morena v. South Hills Health Sys.,* 501 Pa. 634, 462 A.2d 680, 684 n. 5 (1983) (citing W. Prosser, *Law of Torts* § 30, at 143 (4th ed. 1971)). On the issue of causation, "even when it is established that the defendant breached some duty of care owed the plaintiff, it is incumbent on a plaintiff to establish a causal connection between defendant's conduct ... [and such conduct] must be shown to have been the proximate cause of plaintiff's injury." *Hamil v. Bashline,* 481 Pa. 256, 392 A.2d 1280, 1284 (1978).

█ Under Pennsylvania law, causation involves *both* cause in fact (or physical cause) and proximate (or legal) cause. There is much confusion regarding the concept of causation because the term "proximate cause" is often used to embody both cause in fact and legal cause.[5] However, cause in fact and

---

2. Oral argument on Federal Express' Motion was heard by this Court on May 17, 1996.

3. The letterpack at issue was addressed to Jane Saydah, Galullo's granddaughter.

4. The parties agree that Pennsylvania law applies in this diversity action.

5. The Pennsylvania Supreme Court has admitted difficulty in explaining the concept of causation:

> One could wish that the pronouncement of this Court on the subject over the years had been somewhat more lucid, more consistent, more forthright; had distinguished between cause in a factual or "philosophic" sense and

proximate cause are separate and distinct concepts and both must be proved by a plaintiff. *Redland Soccer Club, Inc. v. Department of Army,* 55 F.3d 827, 851 (3d Cir. 1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 772, 133 L.Ed.2d 725 (1996); *Estate of Flickinger v. Ritsky,* 452 Pa. 69, 305 A.2d 40, 42–43 (1973). Cause in fact, or "but for" causation, requires proof that the alleged injury would not have occurred but for the negligent conduct of the defendant. *Robertson v. Allied Signal, Inc.,* 914 F.2d 360, 366 (3d Cir.1990). The question of whether cause in fact has been shown involves "a *de minimis* standard of causation under which even the most remote and insignificant force may be considered the cause of an occurrence." *Herman v. Welland Chem., Ltd.,* 580 F.Supp. 823, 827 (M.D.Pa.1984) (quoting *Takach v. B.M. Root, Co.,* 279 Pa.Super. 167, 420 A.2d 1084 (1980)).

▆▆ Proximate cause, on the other hand, assumes the presence of cause in fact and serves as a means by which courts are able to place practical limits on liability as a matter of policy. *Wisniewski v. Great Atl. & Pac. Tea Co.,* 226 Pa.Super. 574, 323 A.2d 744 (1974). It involves a determination that the nexus between a defendant's wrongful acts or omissions and the injury sustained is of such a nature that it is socially and economically desirable to hold that defendant liable.[6] In determining whether a defendant's negligence is the proximate cause of a plaintiff's

injury, Pennsylvania has adopted the "substantial factor" test set forth in Section 431 of the Restatement (Second) of Torts (1965).[7] Under this test, a defendant's negligent conduct is not the proximate cause of plaintiff's injury unless "the alleged wrongful acts were a substantial factor in bringing about the plaintiff's harm." *E.J. Stewart, Inc. v. Aitken Prods., Inc.,* 607 F.Supp. 883, 889 (E.D.Pa.1985), *aff'd,* 779 F.2d 42 (3d Cir. 1986).

As discussed above, the plaintiff bears the burden of establishing causation and must do so by a preponderance of the evidence:

> The quantum of proof necessary to warrant a jury verdict for the plaintiff is, as we have stated earlier, . . . a preponderance of the evidence. This is made clear in Comment (a) to Section 433B of the Restatement [ (Second) of Torts]:
>
> . . . . .
>
> a. Subsection (1) states the general rule (that the burden of proof as to causation is on the plaintiff). As on other issues in civil cases, the plaintiff is required to produce evidence that the conduct of the defendant has been a substantial factor in bringing about the harm he has suffered, and to sustain his burden of proof by a preponderance of the evidence. This means that he must make it appear that it is more likely than not that the conduct of

---

proximate or legal cause; had acknowledged that the concept, like that of negligence itself, was designed not only to permit recovery for a wrong, but to place such limits on liability as are deemed socially or economically desirable from time to time.

*Whitner v. Lojeski,* 437 Pa. 448, 263 A.2d 889, 893 (1970) (footnote omitted).

6. The Pennsylvania Supreme Court has explained:

> Whether the issue is discussed in terms of "proximate cause" or "legal cause" the underlying considerations and the result are the same. Under the older and more traditional approach the issue was whether the defendant's conduct was a proximate cause or a remote cause. Under the Restatement approach the issue is whether the defendant's conduct was, on the one hand, a "substantial factor" or a "substantial cause" or, on the other hand, whether the defendant's conduct was an "insignificant cause" or a "negligible

cause." *See* Section 431, Restatement of Torts, (Second). The determination of the issue simply involves the making of a judgment as to whether the defendant's conduct, although a cause in the "but for" sense is so insignificant that no ordinary mind would think of it as a cause for which a defendant should be held responsible.

*Ford v. Jeffries,* 474 Pa. 588, 379 A.2d 111, 114 (1977).

7. This section provides that:

> The actor's negligent conduct is a legal cause of harm to another if—
> (a) his conduct is a substantial factor in bringing about the harm, and
> (b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in harm.

*See* Restatement (Second) of Torts § 431 (1965); *Whitner,* 263 A.2d at 894 (adopting Restatement approach).

the defendant was a substantial factor in bringing about the harm.

*Hamil,* 392 A.2d at 1288 (quoting Restatement (Second) of Torts § 433B (1965)). Therefore, Galullo must present evidence showing that it was more likely than not that the negligent conduct of Federal Express was the cause of her injuries.

### A. *Plaintiff's Evidence of Causation*

During her deposition, Galullo initially testified that she slipped on a "slippery envelope" as indicated below:

Q. When you got to the garage door, what happened next?

A. Well, I opened the door and I thought I was going to see the man there. There was nobody there, so when I put my foot down here, I put my foot down on this slippery envelope—I didn't think about the envelope. It didn't bother me. The envelope went under the tractor and I just laid there and tried to get up and tried to get up and I couldn't budge.

(Galullo Dep. at 38). However, after further questioning, Galullo conceded that she had no personal knowledge of what caused her to fall:

Q: At what point did you first see the package?

A: *I didn't see it, I felt it.* I told my daughter, I says, look I stepped on something, I told her. I told her I said, look for it. I guess it was after when I was in the hospital—*I don't know how it was, I asked her and she said it was an envelope, remember.* She said it was an envelope. I said that's what I stepped on, I says, because I could feel it, it was wet.

Q: So as you laid there that morning, you never did actually see the package?

A: No. I knew I felt it though under my foot.

Q: What did it feel like?

A: *Something wet.*

Q: Can you describe it in any more detail than that?

A: No.

Q: So it felt like something wet?

A: That's right.

Q: Did you feel any size or width to whatever it was you stepped on?

A: The only thing was when I was laying there that day all that dampness coming in on me, the water coming, dampness coming. The house was wide open. What a mess.

Q: But going back to when you stepped out with your right foot, you said it felt wet. Did it feel any—

A: I couldn't move it.

Q: Let me rephrase my question. As you stepped out with your right foot, you said you could feel something wet. Whatever you stepped on, did it have a size to it that you could feel?

A: No, it was just plain.

Q: *Did you ever see the package? Did anybody ever show it to you?*

A: *No.*

Q: *So you've never seen the package?*

A: *No.*

(Galullo Dep. at 43–46) (emphasis added). As indicated above, Galullo has no personal knowledge of what she slipped on other that it "felt" like "something wet." In addition, Galullo stated that the reason she believed that she slipped on the letterpack was because that is what her daughter had told her. *Id.* at 43.

In an attempt to establish that the letterpack caused her fall, Plaintiff's counsel relies on a statement Galullo allegedly made to her daughter, Carol Saydah ("Saydah"). In describing what she encountered upon arriving home from work, Saydah testified as follows:

A. I first noticed my mother and I went over to her and I started to put my arm around her neck and she said—and I said what happened? What happened? She said can't you see what happened, I slipped on that envelope and I broke my leg. I said what envelope? She said the one out in the garage and I went out and I looked and I found it under the tractor.

(Saydah Dep. at 39). Defendant Federal Express argues that the statement by Galullo to her daughter is inadmissible hearsay falling within no exception and, therefore, can-

not be considered in determining a motion for summary judgment.

First, Federal Express contends that the alleged statement cannot be considered an admission by a party opponent under F.R.E. 801(d)(2) because the statement is not being offered against Saydah, the party uttering the statement. *See United States v. Phelps,* 572 F.Supp. 262, 265 (E.D.Ky.1983). Second, the statement is not a present sense impression under F.R.E. 803(1) because the statement was made approximately six (6) to seven (7) hours after Plaintiff's fall and was not "a statement describing or explaining an event or condition made while the declarant was perceiving the event or condition or immediately thereafter." *Id.* Also, the statement cannot be considered an excited utterance under F.R.E. 803(2) because it was not "a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." *See David By Berkeley v. Pueblo Supermarket,* 740 F.2d 230, 235 (3d Cir.1984). In its brief in opposition to Defendant's Motion, Plaintiff failed to respond to Federal Express' assertion that the statement is inadmissible hearsay. This Court agrees that the statement is inadmissible hearsay and such statement will not be considered in the present motion.

Therefore, on the record before the Court, Galullo has offered no direct evidence that the letterpack at issue caused her injuries. Moreover, it is beyond question that the mere happening of an accident is not evidence or proof of negligence on the part of anyone. *See Markovich v. Bell Helicopter Textron, Inc.,* 805 F.Supp. 1231, 1236 (E.D.Pa.), *aff'd,* 977 F.2d 568 (3d Cir.1992); *Hamil,* 392 A.2d at 1284; *Cuthbert v. City of Philadelphia,* 417 Pa. 610, 209 A.2d 261, 263 (1965); *Lanni v. Pennsylvania R.R.,* 371 Pa. 106, 88 A.2d 887 (1952). It is equally clear that negligence need not be proved by direct evidence; a plaintiff may use circumstantial evidence to prove negligence or proximate cause. *Hamil,* 392 A.2d at 1285; *Lanni,* 88 A.2d at 888.

What is required is evidence, which means some form of proof; and it must be evidence from which reasonable persons may conclude that, upon the whole, it is more likely that the event was caused by negligence than it was not. As long as the conclusion is a matter of mere speculation or conjecture, or where the probabilities are at best evenly balanced between negligence and its absence, it becomes the duty of the court to direct the jury that the burden of proof has not been sustained. W.P. Keeton et al., *Prosser and Keeton on Torts* § 39, at 242 (5th ed. 1984); *see Farnese v. Southeastern Pennsylvania Transp. Auth.,* 338 Pa.Super. 130, 487 A.2d 887, 889 (1985) (quoting *Flagiello v. Crilly,* 409 Pa. 389, 187 A.2d 289 (1983)) (holding circumstantial evidence must preponderate in favor of conclusion sought so as to outweigh any other evidence inconsistent therewith); *see also Smith v. Bell Tel. Co.,* 397 Pa. 134, 153 A.2d 477 (1959) (requiring plaintiff to establish sufficient facts for jury to conclude preponderance favors liability).

In the present action, Galullo seems to argue that she slipped on the letterpack because it was later found under a tractor in the garage, approximately ten feet (10') from where she fell. Galullo has presented no other circumstantial evidence that the letterpack caused her injuries other than stating that what she slipped on "felt" like "something wet." However, there is also evidence that she may have slipped on something other than the letterpack. For example, Galullo's daughter testified that when she arrived home that afternoon, one of the garage doors was open, the wind was blowing and there were wet leaves in the area where her mother fell. (Saydah Dep. at 25). There was also testimony that on the floor below the door where Galullo fell there was a "worn down braided type of rug that was always there for many years" which was "not very thick." *Id.* at 34. This rug was positioned so that when someone stepped out of the doorway they would have to step on the rug. *Id.* at 35.

Thus, the record presently before the Court indicates that there are several equally plausible possibilities as to what caused Galullo's fall: (1) she could have slipped on the letterpack; (2) she could have slipped on wet leaves; or (3) she could have slipped on the rug. Galullo has no personal knowledge of

what caused her to fall; her assertion that it was the Federal Express letterpack is nothing more than pure speculation. While the letterpack may have indeed caused her fall, it is equally plausible that she slipped on wet leaves or on the rug at the foot of the door. In short, a jury would have to speculate that it was the letterpack which caused Galullo to fall.

Pennsylvania courts have long held that a jury is not permitted to speculate or guess since conjecture, guess or suspicion do not amount to proof. *Cuthbert*, 209 A.2d at 264; *Karcesky v. Laria*, 114 A.2d 150, 152 (Pa.1955); *Lanni*, 88 A.2d at 888. In *Cuthbert*, the plaintiff fell and was injured while crossing a public street. At the site where she fell, there were properly maintained railroad tracks and a depression in the street three inches (3″) to four inches (4″) deep and six and one-half feet (6½′) in length which, if it had been the cause of plaintiff's fall, would admittedly be sufficient to prove that the defendant was negligent. The court held that the plaintiff failed to prove factual cause as a matter of law and that the trial judge erred in submitting the case to the jury: "[plaintiff] may very well have fallen into the defect as she alleged, but she has failed to prove any facts upon which a jury would have been justified in so finding." *Cuthbert*, 209 A.2d at 264. The court went on to say that: "[t]he jury may not be permitted to reach its verdict on the basis of speculation or conjecture; there must be evidence upon which its conclusion may be logically based." *Id.* (citations omitted).

In the case of *Houston v. Republican Athletic Assoc.*, 343 Pa. 218, 22 A.2d 715 (1941), the plaintiff's decedent sustained fatal injuries after falling down a stairway. There were no witnesses to the accident but it was argued that the decedent caught his foot on a splinter of wood on the edge of a step. At the close of plaintiff's case a compulsory nonsuit was entered which the lower court refused to vacate. In affirming the lower court's decision, the Pennsylvania Supreme Court stated:

> In the absence of any direct proof as to the manner in which the accident occurred, the burden was on appellant to produce evidence of circumstances so strong as to preclude the possibility of injury in any other way and provide as the only reasonable inference the conclusion that her husband's death was caused by the negligence of appellees in the manner alleged.

. . . . .

> While it may be that the appellant's hypothesis as to the cause of this regrettable accident is a plausible one, for all that appears from the evidence, the circumstances relied upon are at least equally consistent with theories of the case attributing the accident to a variety of causes, not excluded by the evidence, for none of which any of appellees could conceivably be held liable, as the court below has pointed out, including the possibility that the deceased may simply have tripped or stumbled, without such tripping or stumbling having any connection whatever with the defects in the steps complained of. Under these circumstances, a finding that the fatal injuries of appellant's husband resulted from the negligence alleged would, at most, represent nothing but a mere guess or conjecture; hence, a verdict for appellant could not be sustained. Where a defendant is liable for only one of two or more equally probable causes and to say which is a mere guess, there can be no recovery.

*Id.* 22 A.2d at 716 (citations omitted).

Similarly, in the case of *Watkins v. Sharon Aerie No. 327 Fraternal Order of Eagles*, 423 Pa. 396, 223 A.2d 742 (1966), the plaintiff slipped and fell while leaving the defendant's premises but was unable to establish what had caused her to fall. The court concluded by stating the following:

> Mrs. Watkins was 73 years old and had suffered a stroke three years previously. She may have slipped or lost her balance through no fault of the defendant, or she may have tripped over her own foot, or she may have become dizzy. In any event, plaintiff failed to prove that her fall and injury was due to some particular negligence of the defendant—what caused her

to fall could only be a guess, and that is not sufficient to take a case to the jury. *Id.* 223 A.2d at 745.

The Third Circuit Court of Appeals recently addressed the issue of a plaintiff's burden regarding causation in the case of *Fedorczyk v. Caribbean Cruise Lines,* 82 F.3d 69 (3d Cir.1996). In that case, the plaintiff was injured after she slipped and fell in a bathtub aboard the defendant's cruise ship. The plaintiff argued that the defendant's failure to provide adequate abrasive strips in its bathtub was the proximate cause of her injuries. The tub at issue had four anti-skid strips which ran from the middle to the back of the tub. The plaintiff had no recollection whether her feet were on or off the strips when she fell and offered no direct evidence that the lack of an abrasive surface in the bathtub caused her accident. Instead, plaintiff offered the following circumstantial evidence: after the accident she discovered that her feet could fit between the strips; she testified that she was standing in the middle of the tub when she fell; and her expert testified that, based on his inspection of the tub and the evidence presented to him, the defendant's failure to adequately strip the tub caused plaintiff's injuries.

The expert's opinion was stricken by the district court since it was based on pure speculation and not on any direct or circumstantial evidence of where plaintiff was standing when she fell. The district court granted defendant's motion for summary judgment, holding that plaintiff failed to produce any evidence that defendant's failure to provide adequate abrasive strips in its bathtub was the proximate cause of plaintiff's injuries. In affirming, the Third Circuit stated that, without any evidence tending to show where plaintiff was standing when she fell, a jury would be left to speculate as to whether defendant's admitted failure to adequately strip the bathtub caused plaintiff's injuries. The Court concluded that: "[a] mere possibility of such causation is not enough; and when the matter remains one of pure speculation and conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant." *Fedorczyk,* 82 F.3d at 75 (quoting Restatement (Second) of Torts § 433B (1965)).

Like the plaintiff in *Fedorczyk,* Galullo has presented no evidence tending to prove that it was the letterpack which caused her to fall. Galullo stated that she slipped on "something wet" and assumes that it must have been the letterpack which was later found under a tractor, approximately ten (10) to fifteen (15) feet from where she fell. This is nothing more than pure speculation and conjecture. Furthermore, it is just as likely that Galullo slipped on wet leaves or the rug at the foot of the door. Without any evidence as to what caused her fall, a jury would be left to speculate whether the letterpack was the cause in fact of her injuries and such speculation by a jury is not permitted.

### B. *Foreseeability*

Even assuming that Galullo can establish that it was the letterpack on which she slipped, summary judgment is warranted because Federal Express' courier exercised ordinary care as a matter of law.

 In Pennsylvania, whether a defendant owes a duty of care to a plaintiff is a question of law. *See Kleinknecht v. Gettysburg College,* 989 F.2d 1360, 1366 (3d Cir. 1993) (citing Restatement (Second) of Torts § 328(B) (1965)). Foreseeability plays an integral part in determining whether such a duty exists in Pennsylvania negligence law. *Griggs v. BIC Corp.,* 981 F.2d 1429, 1435 (3d Cir.1992). If the risks attending defendant's conduct were foreseeable, "the last part of the traditional duty analysis is to determine whether the foreseeable risks were unreasonable." *Monahan v. Toro Co.,* 856 F.Supp. 955, 965 (E.D.Pa.1994). In *Griggs,* the Third Circuit predicted that the Pennsylvania Supreme Court would employ a risk-utility analysis to determine if foreseeable risks were unreasonable. *Id.* at 1435–36. This analysis balances "the risk, in light of the social value of the interest threatened, and the probability and extent of the harm, against the value of the interest which the actor is seeking to protect." *Id.* at 1436.

In *Schell v. United Parcel Serv.,* 61 Ohio Misc.2d 421, 579 N.E.2d 791 (Ohio Com.Pl.

1989), the Ohio court dealt with a nearly identical set of facts to the case at bar and granted summary judgment in favor of the defendant delivery company. In that case, the plaintiff sustained serious injuries after falling over a United Parcel package delivered to her home. Sometime between 9:00 p.m. and 10:00 p.m. the plaintiff heard a knock on her front door. After telling her husband she would find out who was knocking, she looked out a small window in the door but was unable to see anyone. Plaintiff then opened the main door and looked out the self-closing storm door a few inches beyond but was still unable to see anyone. She then proceeded to step out into her porch when her foot struck a package lying in the space between the storm door and main door causing her to fall.[8] The courier testified that he left the package at plaintiff's residence pursuant to the company's "driver release" procedure. Under this procedure, a courier is permitted to leave packages without obtaining the recipient's signature thereby making deliveries more efficient.

In granting defendant's motion for summary judgment, the Ohio court concluded:

Our law does not deny reward to those people who increase productivity by more efficient operation that does not increase any known or present danger.

. . . . .

Viewing now the Ohio law of negligence in the circumstances of this case, this court must conclude that defendants are entitled to summary judgment because plaintiffs have not shown facts from which reasonable minds might conclude that defendants failed to use ordinary care in delivering a gift package to plaintiffs' doorstep. There is not the slightest showing that [defendant's courier], in following his employer's instructions, did any act or failed to do any act that a reasonably careful person would have foreseen as likely to injure, or even endanger, anyone; nor is there any showing that defendants did anything in violation of any statute or rule. Consequently, reasonable minds must conclude that defendants are free from any negligence, i.e.,

any failure to use ordinary care to avoid injury to plaintiff wife, and cannot be charged with liability to plaintiffs.

*Schell*, 579 N.E.2d at 795.

Like the *Schell* case, the Federal Express courier left the letterpack without obtaining the recipient's signature pursuant to the company's "signature release" procedures. Furthermore, the court in *Schell* found no showing that such a policy was likely to endanger anyone. "No person can be expected to guard against harm from events which are not reasonably to be anticipated at all, or are so unlikely to occur that the risk, although recognizable, would commonly be disregarded." W.P. Keeton et al., *Prosser and Keeton on Torts* § 31, at 170–71 (5th ed. 1984). The same is true in the present action—there has been no showing that in following Federal Express policy the courier did any act or failed to do any act that a reasonably careful person would have foreseen as likely to injure or even endanger anyone. Nevertheless, even if it was foreseeable that there was a risk of someone slipping on the letterpack at issue, I find such a risk to be slight and far outweighed by the social value of Defendant's released-package procedures.

## IV. CONCLUSION

Galullo has presented no evidence tending to prove what caused her fall and a jury would be left to speculate that she slipped on the letterpack at issue. As discussed above, a jury is not permitted to do so. In addition, the risk of someone slipping as a result of Defendant's released-package procedure is not an unreasonable risk as a matter of law. In viewing all reasonable inferences in favor of Galullo, I find that she is unable to create a material issue of fact as to causation—an essential element of her negligence claim. Accordingly, summary judgment will be entered in favor of Defendant.

Based on the foregoing, I shall enter the following Order:

8. The package was approximately ten inches (10″) by twelve inches (12″) by two inches (2″) and contained two and one-half (2½) pounds of cheese.

## ORDER

AND NOW, this 24th day of June, 1996, upon consideration of Defendant Federal Express Corporation's *Motion for Summary Judgment*, and the response thereto, it is hereby ORDERED that said Motion is GRANTED. Judgment is entered in favor of Defendant and against Plaintiff.