Douglas **MARTIN**, et al., Plaintiffs,

v.

The **UNITED STATES of America**, Defendant.

No. 95–CV–2543.

United States District Court, E.D. Pennsylvania.

Aug. 13, 1996.

Gerald J. Williams, Williams & Cuker, Philadelphia, PA, Maria Armenti, Joseph Armenti & Associates, Philadelphia, PA, for Plaintiffs.

Margaret Jane Mahoney, Christina Humway Falk, U.S. Department of Justice, Torts

Branch, Civil Division, Washington, DC, for Defendant.

## DECISION

JOYNER, District Judge.

Today we make findings of fact and conclusions of law in this Federal Tort Claims Act matter. 28 U.S.C. §§ 2671–80 (1994). A bifurcated portion of the case was tried to this Court over the course of a three day period in June, 1996. Plaintiffs are eleven individuals who live in Casey Village, a neighborhood that abuts the Naval Air Warfare Center in Warminster, Pennsylvania ("NAWC"). Plaintiffs allege that contaminants originating from NAWC's waste disposal sites reached their groundwater and that they suffered compensable harm as a result. As a result, Plaintiffs have sued the United States of America for damages. The bifurcated June trial addressed the narrow issue of "whether or not contaminants from the waste disposal sites on the NAWC actually reached Plaintiffs' wells." Stip. at 1. The parties have submitted proposed findings of fact and conclusions of law, and the matter is now ripe for decision. Accordingly, this Court makes the following factual findings and legal conclusions pursuant to Fed. R.Civ.P. 52.

## FINDINGS OF FACT

*The Parties*

1. The NAWC is a Navy research and development center that has been in operation since 1944 and is scheduled for closure in 1997. Stip. at 1.

2. The NAWC is located on over 700 acres of land in Warminster Township, Bucks County, Pennsylvania. *Id.*. at 2.

3. In the late 1940s, the NAWC instituted an industrial waste treatment system that ceased operation in 1994. All drains on the western side of NAWC are connected to this waste treatment system. *Id.*

4. The base contains eight former waste disposal sites that were placed under environmental investigation in 1979. *Id.* at 3.

5. Casey Village is a residential community that abuts the NAWC's northeast edge. *Id.*

6. Both the NAWC and Casey Village's groundwater are contaminated with pollutants including tetrachloroethene ("PCE") and trichloroethane ("TCE"). *Id.* at 4, 8.

7. The parties agree that four of the NAWC disposal sites (known as sites 1, 2, 3 & 8) are not responsible for the groundwater contamination found in Casey Village. The parties disagree as to whether sites 4, 5, 6 & 7 are responsible for the groundwater contamination at Casey Village. *Id.* at 3.

8. Site 4 is located approximately 4,000 feet west of Casey Village and sites 5, 6 & 7 are located approximately 2,000 to 3,500 feet west of Casey Village. *Id.*

9. All Plaintiffs either live in or own residences in Casey Village. *Id.* at 7.

10. The runway, which runs from the base's southwest point to its northeast point is the NAWC's highest elevation. The runway passes between site 4 and sites 5–7. *Id.* at 2; Def. Ex. 6.

11. Before 1978, no residence in Casey Village was hooked up to public sewer or water. Rather, each residence used its own well for water, and septic or cesspool systems for waste. Stip. at 7.

12. In 1978, Casey Village was hooked up to the public sewer system. Hopely Dep., p. 58. Casey Village was not hooked up to the public water system until 1993, after the groundwater contamination was discovered. Tr., 6/18/96, p. 46.

*Environmental Contamination*

13. In 1979, the EPA placed the NAWC under investigation for PCE and TCE. Stip. at 4.

14. Over the next ten years, the Navy conducted an environmental investigation of the NAWC. *Id.*

15. In 1989, the NAWC was placed on the National Priorities List pursuant to the Comprehensive Environmental Response Compensation and Liability Act, 42 U.S.C. §§ 9601–75 (1995) ("CERCLA"). Stip. at 4.

16. Since 1989, the EPA and Pennsylvania's Department of Environmental Protection have conducted remedial investigations and

have cleaned up areas of the NAWC, including the eight waste sites. *Id.*

17. Some of the investigations include testing of the original test wells, as well as several hundred on-base test wells and several hundred off-base test wells on the perimeter of the NAWC. Many other tests include taking soil boring samples and conducting soil gas, fracture trace and pumping test studies. *Id.* at 5.

18. Casey Village contains two "plumes" of contamination, a PCE plume and a TCE plume. Tr., 6/18/96, pp. 132–33.

19. One Casey Village resident, Joseph Warren, ran a septic tank and cesspool cleaning business out of his home from 1964 until 1976. Hopely Dep. at 52–53; Clawges Dep. at 35–37; Greenstreet Dep. at 63–66; Def. Ex. 51; Def.Ex. 52.

20. Mr. Warren's business advertised that it chemically treated septic systems, but also that he disposed of his waste at a licensed dump. Def. Ex. 51.

21. TCE was commonly used to clean septic systems. Tr., 6/17/96, p. 162.

22. The TCE contamination at Mr. Warren's residence registered 1200 ppb in both 1993 and 1994. In 1996, the same well registered 430 ppb of TCE. Tr., 6/18/96, pp. 45, 49.

23. Plaintiffs' expert agreed that the TCE found at Mr. Warren's former residence could be the contamination source of TCE at Casey Village and that it also would be consistent with a finding that Mr. Warren had disposed of waste into his own well. Tr., 6/17/96, p. 163–64.

*Expert's Theories*

24. Plaintiffs' expert, Mr. Paul Nachlas, opined that Plaintiffs' groundwater was contaminated by Defendant's groundwater. Briefly, his theory is that the NAWC/Casey Village area is highly fractured, which creates large channels through which groundwater can flow. When Casey Village's wells were in full use, they required more water than their groundwater could supply; therefore, they "reached out" to other groundwater sources, namely, the NAWC groundwater. The wells' need was so great, they reversed some of the natural groundwater flow of sites 4–7 to bring some NAWC water, and its contaminants, to the wells in Casey Village. Tr., 6/17/96, pp. 21, 117–19.

25. Defendant's experts opined that the Casey Village groundwater was not, and could not, have been contaminated by groundwater at the NAWC for a number of reasons including the directions in which the groundwater at sites 4–7 flow; the existence of a "groundwater divide" between the NAWC and Casey Village; the nature of the contaminant distribution and the higher elevation of Casey Village in relation to the NAWC.

*Plaintiffs' Evidence*

26. There is no evidence of an industrial site with groundwater contamination immediately southeast of Casey Village nor evidence that there was ever industrial activity on the site before Casey Village was built. Tr., 6/18/96, p. 125; Ames Dep. at 122.

27. The experts agreed that the bedrock in and around the NAWC is highly fractured and that fractures can provide preferential pathways through which groundwater can flow. Tr., 6/17/96, p. 59; Tr., 6/18/96, p. 17.

28. When an operating well is pumping, it "draws down" the water table in the pumping well relative to surrounding water tables and thereby causes surrounding water to flow toward the pumping well. Tr., 6/17/96, pp. 61–62; Tr., 6/18/96, p. 70.

29. Mr. Nachlas's studies indicated that the Casey Village wells, pumping at full capacity, could exert influence (one-half foot of drawdown) at a distance of 3,000 feet, which exceeds the distance between sites 4–7 and Casey Village. Tr., 6/17/96, pp. 64–70.

30. Generally, water flows from a higher point to a lower point. Tr., 6/18/96, pp. 15, 126.

31. Mr. Nachlas agreed that numerous tests and studies prove that the overall, general flow of the groundwater at sites 4–7 is away from Casey Village. Tr., 6/17/96, p. 126; Tr., 6/18/96, pp. 8–15, 23–24, 38, 40–42; Def.Ex. 2; Def.Ex. 17 at 16; Def.Ex. 24 at 18; Def.Ex. 34; Def.Ex. 42.

32. Mr. Nachlas used maps generated over a series of years showing water level elevations between the NAWC and Casey Village to show that at various times, the water would flow from the NAWC to Casey Village. Tr., 6/17/96, pp. 102–13; Def.Ex. 42.

33. Mr. Nachlas's theory is that contaminants moved from the NAWC to Casey Village on a particle by particle basis. Tr., 6/17/96, pp. 124–25, 131.

34. On cross-examination, one of Defendant's experts, Ms. Kathryn Davies, testified that although her scientific opinion was that no contaminants flowed from sites 4–7 to Casey Village, that she was unable to say "without a doubt that a molecule of TCE hasn't emanated from the boundary or the vicinity of the boundary" of the NAWC to Casey Village; *i.e.*, that a molecule of TCE may have come from some other part of the NAWC to Casey Village. Tr., 6/18/96, pp. 147–48.

35. VOC contaminants, the type of contamination found in this groundwater, are highly variable. Sometimes, a plume of VOC contaminants can skip a downgradient well or contaminate neighboring wells at different rates. Further, testing from the same well at different times can reflect highly changed readings. Tr., 6/18/96, p. 85; Tr., 6/19/96, pp. 36–37. In fact, some NAWC groundwater did contaminate an area north of the base, and the VOC readings in the contaminated areas are slightly higher than the readings at the source of the contamination. Tr., 6/18/96, pp. 59–60.

36. Based on the above, Plaintiffs contend that they have proved that one or all of sites 4–7 are the source of the contamination in Casey Village's groundwater.

*Defendant's Evidence*

*A. Groundwater Flow*

37. Two defense experts, Mr. Jeffery Orient and Mr. Gordon Bennett, contradicted Mr. Nachlas's theory about draw-down. They testified that the difference in water elevation between the NAWC and Casey Village is 21 feet, and therefore, to reverse the ground water flow, as opposed to merely "influencing" it, as Mr. Nachlas had posited, Casey Village's pumping would have to have been strong enough to change water levels 21 feet, which it was not. Tr., 6/18/96, pp. 31–33, 212–19; Tr., 6/19/96, pp. 25–27.

38. Further, Mr. Bennett testified that the amount of "recharge" (the precipitation that replenishes a well that is being pumped) is four times the amount that was being pumped out of Casey Village's wells, so that there was no need for the wells to reach out to other sources for additional water. He concluded that there was no evidence that Casey Village pumping altered the normal flow of groundwater from the NAWC sites. Tr., 6/18/96, pp. 188–98.

39. Mr. Bennett also took each of Mr. Nachlas's assumptions about draw-down and used them in the MODFLOW model, which is the accepted and most popular groundwater flow model, and discovered that Mr. Nachlas's assumptions made the chance of reversed water flow even less likely. Tr., 6/18/96, pp. 181, 221–24.

40. All experts agreed that there is a groundwater divide separating Casey Village and the NAWC. All experts also agreed that groundwater does not flow across a groundwater divide. Tr., 9/17/96, pp. 84, 109, 154–56; Tr., 6/18/96, pp. 50–52, 198–99.

*B. Contaminant Distribution*

41. Hydrogeologists can determine the location of the source and size of a contaminant plume by evaluating the distribution of contaminants. The source of contaminants is generally located where the highest level of contamination is found. Tr., 6/17/96, pp. 138–42, 160–61; Tr., 6/18/96, p. 126; *but see* Finding of Fact 35.

42. The highest readings of TCE and PCE at the NAWC and at Casey Village are as follows:

|  | Site 4 | Sites 5–7 | Casey Village |
|---|---|---|---|
| TCE | 1 ppb | 13 ppb | 1200 ppb |
| PCE | 0 ppb | 2 ppb | 720 ppb |

Tr., 6/18/96, pp. 35, 45; Def.Ex. 20; Def.Ex. 23.

43. There are three monitoring well clusters in a direct line between sites 5, 6 & 7

and Casey Village ("C.V."). The readings from these monitoring wells are:

|  | Closest to C.V. | Midway from C.V. | Furthest from C.V. |
|---|---|---|---|
| TCE | 120 ppb | 1.2 ppb | 0 ppb |
| PCE | 0 ppb | 0 ppb | 0 ppb |

Tr., 6/19/96, p. 55; Def.Ex. 60.

44. Mr. Bennett testified that these findings showed that there was no possibility that groundwater flowed from sites 5, 6, & 7 to Casey Village. Tr., 6/19/96, p. 56.

45. The distribution of contaminants studies consistently reflect that the levels of PCE and TCE contamination are significantly higher in Casey Village than at the NAWC. Tr., 6/18/96, pp. 142–43.

*Source of Casey Village's Contamination*

46. Defendant's experts, each of whom was highly qualified in his or her field, uniformly testified to a reasonable degree of scientific certainty that the groundwater at the NAWC's sites 4–7 flowed away from Casey Village; that pumping at Casey Village never altered that flow; that the water level elevation is higher at Casey Village than at sites 4–7; that there is a groundwater divide separating sites 4–7 and Casey Village; that the amount of water from precipitation exceeded the amount needed to recharge the Casey Village wells; that therefore, sites 4–7 were not the source of contamination at Casey Village and that the sources of Casey Village's contamination were located within Casey Village itself. Tr., 6/18/96, pp. 24–25, 31–32, 50–53, 129–32, 140–50, 160, 182–86, 191, 198–99; Def.Ex. 34; Def.Ex. 45.

47. In 1994, the EPA determined that hydrogeologic studies had shown that the NAWC could not be the source of the TCE and PCE contamination in Casey Village. Def.Ex. 53.

48. This Court finds that Plaintiffs' theory of the Casey Village contamination is not credible in light of all the above evidence.

## DISCUSSION

The only question this Court addresses is whether or not, in the words of the bifurcation order, "contaminants from the NAWC disposal sites contaminated the Plaintiffs' wells." Plaintiffs bear the burden of proof on this issue and must prove causation by a preponderance of the evidence. To do this, Plaintiffs must show both causation in fact (but for causation) and proximate cause. *Miller v. Group Voyagers, Inc.*, 912 F.Supp. 164, 167 (E.D.Pa.1996) (quoting *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 366–67 (3d Cir.1990)); *Morena v. South Hills Health Sys.*, 501 Pa. 634, 642 n. 5, 462 A.2d 680, 684 n. 5 (1983).

We first ask whether Plaintiffs have proved but for causation. *Mateer v. United States Aluminum, Inc.*, 88–2147, 1989 WL 60442 at *4 (E.D.Pa. June 6, 1989). Plaintiffs' expert opined that the conditions that existed at Casey Village, including highly fractured bedrock and great amounts of pumping from Casey Village wells, drew so much water from Casey Village's groundwater that the wells were forced to reach out to other groundwater to service the Casey Village wells. This other groundwater allegedly came from sites 4–7 and brought with it the contaminants at issue.

We found above that Defendant's experts' opinions were more credible than Plaintiffs' expert's theory. We based this finding on overwhelming evidence that Plaintiffs' theory was implausible. Evidence, for example, that Casey Village is at a higher elevation than the NAWC, that there is a groundwater divide between the NAWC and Casey Village, that there was ample precipitation to replenish the Casey Village wells without resort to other groundwater and that the pumping and fractures would not have reversed the flow of the NAWC's groundwater to bring it to Casey Village.

We do not decide where the source of the contamination at Casey Village was. That is not relevant to our task; our question is whether the Plaintiffs have shown, by a preponderance of the evidence, that the contamination at the NAWC's sites 4–7 *did* travel to Casey Village. This is far more than showing that the NAWC pollution *could* have contaminated Casey Village. *Galullo v. Federal Express Corp.*, No. 95–6238, 1996 WL 354757 at *4–5 (E.D.Pa. June 24, 1996); Tr., 6/18/96, pp. 147–48.

Based on the evidence, we find that Plaintiffs have failed to meet their burden. At

most, we find that they have presented a possibility that some particles of contaminants *may* have spread over to Casey Village. Because this is an insufficient showing, we must conclude that Plaintiffs have not proved cause in fact. Without this showing, Plaintiffs cannot make out a claim of negligence, and judgment in Plaintiffs' favor cannot be issued.

## CONCLUSIONS OF LAW

1. Plaintiffs have failed to demonstrate that contaminants from the waste disposal sites 4–7 on the NAWC actually reached Plaintiffs' wells.

2. A verdict and judgment in Defendant's favor are appropriate.

An appropriate Order follows.

## ORDER

AND NOW, this 13th day of August, 1996, following a non-jury trial in this matter and upon careful consideration of the record and the parties' proposed findings of fact and conclusions of law, and for the reasons set forth in the preceding Decision, it is hereby ORDERED that Verdict and Judgment are hereby entered in favor of Defendant on all Counts in Plaintiffs' Complaint.