537 A.2d 951

Setsuko Mendenhall, Administratrix of the Estate of James L. Mendenhall, Deceased, and Setsuko Mendenhall, in her own right and Bruce Mendenhall, Appellants v. Commonwealth of Pennsylvania, Department of Transportation, and Robert E. Price, Appellees.

Argued December 14, 1987, before Judges CRAIG, BARRY, and Senior Judge NARICK, sitting as a panel of three.

*Edward Rubin, Hamburg, Rubin, Mullin & Maxwell,* for appellants.

*Alton G. Grube,* Deputy Attorney General, with him, *LeRoy S. Zimmerman,* Attorney General, for appellees.

OPINION BY JUDGE CRAIG, February 19, 1988:

Setsuko Mendenhall, both as administratrix of the Estate of James L. Mendenhall, deceased, and in her own right, and Bruce Mendenhall (plaintiffs) appeal from an order of Judge RICHARD S. LOWE of the Court of Common Pleas of Montgomery County dismissing their post-verdict motion for a new trial after a jury decided that the Pennsylvania Department of Transportation (DOT) was not liable to them in regard to the traffic accident that resulted in the death of James L. Mendenhall and the injury of Setsuko and Bruce Mendenhall.

According to the opinion of Judge LOWE, the trial established that during the early morning hours of July 15, 1980, vehicles operated by Bruce Mendenhall and Robert Price, an additional defendant joined by DOT, were involved in a head-on collision on Black Rock Road in Upper Providence Township, Montgomery County, Pennsylvania. The testimony of defendant Price established that, on the day before the accident, he arose at approximately 5:30 a.m. and arrived at work at 7:00 a.m. Price was employed as a subcontractor who installed kitchen cabinets and appliances. After working a full day, Price returned home for dinner; then at 8:00 p.m. he met a friend at the Gilbertsville Fire House to play pool. Price shot pool with his friend until 2:45 a.m., and then he left the fire house and proceeded home in a fatigued state. Price was traveling east on Black Rock Road, when, as he maneuvered his vehicle into the beginning of an "S" curve, he crossed the center line, entered into the opposite lane of traffic, and struck the Mendenhalls' automobile. Price testified

that, to the best of his knowledge, he had fallen asleep before the accident occurred. James Mendenhall suffered severe head and chest injuries, which caused his death, and his wife, Setsuko, and son, Bruce, were seriously injured.

The plaintiffs filed suit against DOT alone, alleging that DOT was negligent in failing to post adequate signs along the road, in failing to maintain the yellow median line in the road, and in failing to keep the foliage cut back so that the existing curve sign could be seen clearly by passing motor vehicle operators. The jury returned a verdict of 100% causal negligence against the driver of the other vehicle involved in the collision, Robert Price. Although the jury did find that DOT was negligent, it found that DOT's negligence was not a substantial factor in causing the accident.

On this appeal, the plaintiffs raise four issues in support of their claim that this court should grant a new trial: (1) whether the trial court erred by excluding the testimony of the investigating police officer and of the plaintiffs' accident reconstruction expert that there had been twenty-nine accidents at the curve in question in the five years before this accident, when the plaintiffs assertedly offered that evidence not to prove antecedent negligence with regard to a particular hazardous road condition, but rather as a foundation for their expert's opinion that the number of reported accidents should have triggered a review of the curve by DOT under its standard procedures; (2) whether the trial court erred by ruling that only nine of the previous accidents were sufficiently similar to the accident at issue to be admissible as evidence of antecedent negligence by DOT; (3) whether the court erred by excluding evidence of subsequent remedial measures undertaken by DOT at the curve, when that evidence assertedly was offered not to prove antecedent negligence but to prove the feasibility

and affordability of the remedy suggested by the plaintiffs' expert; and (4) whether the court erred in responding to a question by the jury during its deliberations concerning the meaning of the word *substantial,* as it related to substantial factor and causation, by re-reading only the plaintiffs' requested point for charge relating to the definition of substantial factor and not re-reading the point for charge indicating that there may be more than one substantial factor causing an accident.

## 1. Exclusion of Evidence of Other Accidents Offered as a Foundation for Expert Opinion

In *Whitman v. Riddell,* 324 Pa. Superior Ct. 177, 471 A.2d 521 (1984), a case arising from a collision that occurred when a traffic signal at an intersection turned green in two directions at once, the Superior Court summarized Pennsylvania law regarding the admission of evidence of other accidents:

> In certain circumstances 'evidence of similar accidents occurring at *substantially the same place and under the same or similar circumstances* may, in the sound discretion of the trial Judge, be admissible to prove constructive notice of a defective or dangerous condition and the likelihood of injury.' Stormer v. Alberts Construction Co., 401 Pa. 461, 466, 165 A.2d 87, 89 (1960) (emphasis in original). Such evidence will be permitted 'for the purpose of establishing the character of the place where [the accidents] occurred, their cause, and the imputation of notice, constructive at least, to the proprietors of the establishment, of the defect and the likelihood of injury.' Yoffee v. Pennsylvania Power and Light Co., 385 Pa. 520, 542, 123 A.2d 636, 648-49 (1956), quoting Ringleheim v. Fidelity Trust Co., 330 Pa. 69, 71, 198 A. 628, 629 (1938). This

limited exception, permitting the introduction of evidence of similar accidents, is tempered by judicial concern that the evidence may raise collateral issues, confusing both the real issue and the jury. Stormer v. Alberts Construction Co., supra, 401 Pa. at 466, 165 A.2d at 89.

*Whitman*, 324 Pa. Superior Ct. at 180-81, 471 A.2d at 523. The Superior Court held that the trial court's admission of evidence of thirty-six previous accidents at the intersection in question was reversible error because those accidents resulted from causes wholly foreign to the malfunctioning traffic light alleged to be the cause of the accident in *Whitman* and therefore introduced collateral issues.

In the present case, the trial court's discussion of its ruling on the plaintiffs' offer of evidence of twenty-nine previous accidents *not* based on their similarity to the accident at issue was as follows:

Plaintiffs argue that they were offering the testimony of the twenty-nine (29) prior accidents not to prove constructive notice of a dangerous condition, but to establish a foundation for their expert's opinion that PennDOT should have conducted a review of the curve in question because PennDOT had notice of a pattern of accidents on Black Rock Road. This Court fails to see the difference between establishing such a foundation and proving that a dangerous condition existed at the curve. In essence, plaintiffs were attempting to prove that PennDOT should have investigated a dangerous condition. The unspoken purpose of attempting to admit all twenty-nine (29) accidents was to inflame and impassion the jury; to prejudice the jury against PennDOT. Furthermore, the evidence of nine (9) prior accidents

was sufficient to establish the Commonwealth was constructively notified of a potentially dangerous curve.

As the Commonwealth notes in its brief, the statute that enumerates exceptions to sovereign immunity, 42 Pa. C. S. §8522, does not create an exception for negligent review of records. We agree with the trial court's analysis that the plaintiffs' efforts to lay a foundation for their expert's opinion that DOT should have conducted a review of the curve based solely on the number of reported accidents is simply another way of attempting to prove that a dangerous condition existed at the curve, although such proof arguably relates more to an assertion of a generally dangerous nature of the curve, rather than to an assertion of any particular dangerous condition at the curve.

The plaintiffs concede that no Pennsylvania case supports the proposition that they advance, but they cite for persuasive value the Illinois case of *First National Bank of Normal v. Illinois Central Gulf Railroad Co.*, 62 Ill. App. 3d 36, 378 N.E.2d 1329 (1978). In that case, involving a collision between a train and a car at a railroad crossing in Atlanta, Illinios, the appellate court affirmed the trial court's admission of evidence of other crossing accidents within the town, some at different crossings, which concededly did not meet the substantial similarity test, as a foundation for the introduction of a petition filed by the mayor of the town with the Illinois Commerce Commission requesting guardgates, where the petition was offered to show notice to the company of the concern on behalf of the town that the crossing protections were inadequate.

The principle established in *First National Bank of Normal* was later refined by the same court as follows:

In sum, if the plaintiff alleges that a specific or *particular danger* exists, then he should be

allowed to enter evidence of prior similar accidents and their details. He should not be allowed to enter any evidence concerning dissimilar accidents.

If the plaintiff alleges that the accident site is of a *generally hazardous* nature, he should be allowed to enter evidence of any prior accident—regardless of its similarity to the accident *sub judice*. He should not, however, be allowed to enter any evidence concerning the details of those accidents.

If the plaintiff alleges both the existence of a particular danger and the generally hazardous nature of the site, he should be allowed to enter evidence of both similar and dissimilar prior accidents but he should not be allowed to enter the details of only the similar accidents. The relevancy of each prior accident should be challenged by either a proper pretrial motion or a timely objection and, of course, its relevancy must be determined by the trial judge.

*Henderson v. Illinois Central Gulf Railroad Co.,* 114 Ill. App. 3d 754, 759, 449 N.E.2d 942, 945-46 (1983) (emphasis in original).

Although these cases are instructive as to the wisdom of the courts of a sister state, they do not represent the law in Pennsylvania. Because neither the plaintiffs' research nor our own has uncovered any Pennsylvania state court decisions advancing a similar proposition, we conclude that the trial court was correct in judging the admissibility of the plaintiffs' proffered evidence of other accidents according to the substantial similarity test outlined in *Whitman v. Riddell.*

## 2. Exclusion of Evidence of Other Accidents Based on Lack of Substantial Similarity

The plaintiffs' second argument on the issue of admission of evidence of other accidents is that twenty of the twenty-nine previous accidents were substantially similar to the accident at issue, so the trial court committed reversible error by admitting evidence of only nine of those accidents.

The Pennsylvania Supreme Court, in its discussion of this principle of admissibility, stated that the decision whether to admit evidence of similar accidents rests in the sound discretion of the trial judge. *Stormer v. Alberts Construction Co.*, 401 Pa. 461, 466, 165 A.2d 87, 89 (1960). Also, application of this exception to the general rule that evidence of other accidents is irrelevant to prove negligence on a particular occasion is tempered by judicial concern that the evidence may raise collateral issues confusing the jury. *Id.*

As noted above, the accident involved in this case occurred at the westernmost part of an "S" curve, as the car driven by the defendant Price, traveling east, entered the curve and crossed into the other lane, colliding with the plaintiffs' car, which was traveling west and was exiting the curve. The trial court concluded that only accidents involving vehicles traveling east and crossing into the westbound lane near the western part of the curve occurred at substantially the same place and under the same or similar circumstances as the accident at issue. In the judge's view, the accidents of which evidence was excluded resulted from causes alien to the cause of action at issue in that they occurred at the opposite end of the curve where the vehicle crossing over was traveling in the opposite direction or under totally different weather conditions or other circumstances.

The admission of evidence of the other assertedly similar accidents certainly would have raised many collateral issues for the jury to ponder in attempting to sift any elements of similarity from the many dissimilar elements involved in those accidents. The curve in question has substantial changes in elevation as well as in direction, so that various points along the curve are markedly different from one another. The plaintiffs' contention that the entire curve was dangerous and could not be negotiated safely in either direction at the speed limit posted at the time of the accident was not a frivolous argument. Nevertheless, we cannot find that Judge LOWE abused his discretion in his reasoned attempt to distinguish between those accidents that were sufficiently similar to the one at issue to have probative value regarding the condition of the curve at the point where this accident occurred, and those accidents that were sufficiently dissimilar so that their potential for raising collateral issues and confusing the jury outweighed their probative value.

### 3. Exclusion of Evidence of Subsequent Remedial Measures

The plaintiffs' third contention is that the trial court erred by excluding evidence in the form of testimony and photographs of subsequent remedial measures undertaken by DOT at the curve in question. The plaintiffs attempted to introduce evidence that, after this accident, DOT placed an advisory speed plate on the "Curve Ahead" sign before the curve and placed a large arrow sign in the curve. The plaintiffs assert that they offered this evidence not to prove antecedent negligence by DOT, but rather to establish the availability of an affordable and feasible remedy to improve the safety of the curve in line with the recommendations of their

expert (which recommendations were admitted during the expert's testimony).

In Pennsylvania, evidence of subsequent remedial measures is inadmissible for the purpose of imputing antecedent negligence, although such evidence is admissible if competent for another purpose so long as it is qualified by instructions to the jury to use the evidence only for the purpose for which it was received. *Incollingo v. Ewing,* 444 Pa. 263, 294, 282 A.2d 206, 223 (1971).

The plaintiffs rely principally on *Hyndman v. Pennsylvania Railroad Co.,* 396 Pa. 190, 152 A.2d 251 (1959), in which a young boy suffered serious electrical burns when he climbed a railroad's catenary pole located next to a boy scout camp and came in contact with a high-voltage line. The railroad at trial introduced extensive evidence as to the feasibility and costs of various precautions it could have taken, including that of posting warning signs. The Supreme Court held that the trial court did not err by admitting evidence that the railroad later placed a warning sign on the pole in question, subject to repeated instructions that the jury should consider that evidence only on the issues of feasibility and affordability.

The present case is readily distinguishable from *Hyndman.* As Judge Lowe noted in his opinion, he had stated on the record, in the presence of the jury, the obvious fact that DOT had many signs available to it, and DOT could have installed additional signs at the curve for a nominal amount. DOT made no effort to dispute that fact. In other words, there simply was no issue of feasibility or affordability of different signs at the curve. Therefore, the plaintiffs' proffered evidence did not relate to any material fact in issue, and hence was irrelevant. We agree with the trial court's conclusion that the only use the jury could have made of the prof-

fered evidence would have been to impute antecedent evidence, to the prejudice of the Commonwealth.

### 4. The Court's Recharge Regarding the Meaning of the Word "Substantial"

The jury, after deliberating a short time, addressed a communication to the judge which stated, "Please clarify the meaning of 'substantial' in Question 2." Question 2 on the jury's sheet was as follows: "Was Defendant's negligence a substantial factor in bringing about all or any of the Plaintiffs' injuries, damages or losses?" The jury was to answer this question separately for each defendant.

The court responded to this communication by reading to the jury the plaintiffs' requested Point for Charge No. 18:

> In order for the Plaintiffs to recover in this case, the Defendant PennDOT's negligent conduct must have been a substantial factor in bringing about the accident. This is what the law recognizes as legal cause. A substantial factor is an actual, real factor, although the result may be unusual or unexpected, but it is not an imaginary or fanciful factor having no connection or only an insignificant connection with the accident.

As the court noted in its opinion, this point for charge is also found in the Pennsylvania Standard Jury Instructions (Civil) at §3.25.

The general rule on jurors' questions appears in *Worthington v. Oberhuber*, 419 Pa. 561, 563, 215 A.2d 621 (1966):

> There may be situations in which a trial judge may decline to answer questions put by the jury, but where a jury returns on its own motion indi-

cating confusion, the court has the duty to give such additional instructions on the law *as the court may think necessary to clarify the jury's doubt or confusion.* (Emphasis added.)

This rule obviously commits to the sound discretion of the trial judge the scope of such additional instructions as he decides to give to a jury that has expressed confusion.

The plaintiffs argue that the court also should have re-read a separate point for charge that addressed the issue of concurrent causation, stating that there may be more than one substantial factor causing an accident. However, the court confined the additional instruction to the precise question posed by the jury, believing that such instruction defined and clarified the meaning of the word *substantial* as it related to substantial factor and causation. The jury had not requested further instruction on the issue of concurrent causation, and the court was not obligated to give further instructions beyond those requested by the jury. Accordingly, we find no abuse of discretion in the trial court's response to the jury's request for additional instruction.

The order of the trial court denying the plaintiffs' motion for a new trial is affirmed.

ORDER

Now, February 19, 1988, the order of the Court of Common Pleas of Montgomery County, at No. 81-18924, dated May 7, 1987, is affirmed.