# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Blair S. Mitchell, | : | |
| Appellant | : | |
| | : | No. 344 C.D. 2017 |
| v. | : | |
| | : | Argued: November 13, 2018 |
| Michelle M. Milburn and James V. | : | |
| Lewis and Commonwealth of | : | |
| Pennsylvania, Department of | : | |
| Transportation | : | |

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
             HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION BY
JUDGE McCULLOUGH                      FILED:  December 6, 2018


In this motor vehicle accident case, Blair S. Mitchell (Plaintiff) appeals from the judgment entered on May 1, 2017, in favor of Plaintiff on her negligence claim against Michelle M. Milburn (Defendant Milburn).

The three-car accident occurred at an inverted "T" intersection on June 30, 2002, at approximately 8:15 p.m., on State Road 73 (Skippack Pike) at the road's juncture point with Weber Road, in Worcester Township, Montgomery County. The evening was clear and dry and it was still daylight, with sunset occurring around 8:34 p.m. Skippack Pike is a two-lane highway with one lane of travel east and one lane of travel west, *i.e.*, the horizontal part of the "T." Weber Road is a two-lane roadway with one lane of travel north and one lane of travel south, *i.e.*, the vertical part of the "T." (Trial court op. at 1, 7.)

Plaintiff was proceeding eastbound on Skippack Pike preparing to turn left onto Weber Road. No traffic control device governed the intersection of Skippack Pike and Weber Road, and there was no special left-turn lane for eastbound vehicles turning north from Skippack Pike onto Weber Road. Plaintiff came to a stop in the eastbound lane of Skippack Pike and waited with her turn signal on for the westbound traffic to clear. While she was stopped and waiting to turn left, Plaintiff was struck from behind, apparently at a peculiar angle, by a vehicle operated by Defendant Milburn, which was traveling between 50 and 55 miles per hour. The dramatic force of the collision caused Plaintiff's vehicle to flip and roll over and slide on its roof into the westbound lane of Skippack Pike. At the same time, Defendant James V. Lewis was driving his vehicle in the westbound lane of Skippack Pike, approximately 40 to 50 miles per hour and within the posted speed limit, in close proximity to the intersection. Upon seeing Plaintiff's vehicle hurtling toward him in the westbound lane, Defendant Lewis immediately applied his brakes, but was unable to avoid colliding with Plaintiff's vehicle. As a result of the accident, Plaintiff sustained serious personal injuries. *Id.* at 1-2, 7.

Thereafter, Plaintiff initiated a negligence action against Defendants Milburn, Lewis, and the Department of Transportation (DOT). A trial commenced on October 5, 2016. The next day, Plaintiff and Defendant Milburn settled on the record and agreed to enter into a pro-rata joint tortfeasor settlement agreement, whereby Milburn would remain on the verdict sheet for the jury to assess the proportionate share of liability among the Defendants.[1] The trial then proceeded to

---

[1] The terms and conditions of the agreement are located in the reproduced record in a related appeal pending before this Court, *Mitchell v. Milburn* __ A.3d __ (Pa. Cmwlth., No. 1261 C.D. 2017, filed December 6, 2018). The written agreement itself is in the Supplemental Reproduced Record at 45b-47b, and the hearing transcript regarding the settlement agreement is in Plaintiff's **(Footnote continued on next page…)**

determine whether Plaintiff could establish liability against the remaining non-settling parties, Defendant Lewis and Defendant DOT. *Id.* at 2.

During the course of trial, and as part of her negligence claim against Defendant DOT, Plaintiff sought to introduce evidence that discussed and depicted design changes that Defendant DOT made at the intersection after the accident occurred. More specifically, Plaintiff proffered testimony and photographic evidence that showed road markings on Skippack Pike, eight years after the subject accident, that contained a lane specifically dedicated for a left-turn. The Court of Common Pleas of Montgomery County (trial court) ruled that the evidence was inadmissible as a subsequent remedial measure under Pa.R.E. 407. (Trial court op. at 2.)

At the close of Plaintiff's case-in-chief, Defendant Lewis and Defendant DOT made oral motions for a compulsory non-suit pursuant to Pa.R.C.P. No. 230.1. The trial court granted Defendant Lewis' motion, based on the sudden emergency doctrine, determining that no reasonable jury could find that Defendant Lewis acted in a negligent manner. The trial court denied Defendant DOT's motion. (Trial court op. at 2.)

On October 7, 2016, the jury returned a verdict. On the verdict sheet, the jury found that Defendant Milburn (the defendant who settled) was negligent and that Defendant DOT was not negligent. The jury attributed 100% of the negligence to Defendant Milburn and awarded Plaintiff damages in the amount of $2,315,693.00. (Trial court op. at 2; Reproduced Record (R.R.) at 340a-41a.)

---

**(continued…)**

Reproduced Record at 46a-52a. For a discussion of joint tortfeasor and pro-rata settlement agreements, *see Taylor v. Solberg*, 778 A.2d 664 (Pa. 2001); *Charles v. Giant Eagle Markets*, 522 A.2d 1 (Pa. 1987).

On October 17, 2016, Plaintiff filed motions for post-trial relief, contending that the trial court erred in granting Defendant Lewis' motion for a non-suit and sustaining Defendant DOT's objection at trial to Plaintiff's attempt to introduce into evidence the post-accident testimony and photograph mentioned above. On February 21, 2017, the trial court issued an order denying Plaintiff's motions, and Plaintiff filed a notice of appeal on March 16, 2017. (Trial court op. at 2-3.)

By order dated April 27, 2017, this Court directed Plaintiff to reduce the verdict to a judgment within 14 days, and Plaintiff filed a praecipe to enter judgment on May 1, 2017, pursuant to Pa.R.C.P. No. 227.4. (R.R. at 293a.)[2, 3]

## Discussion

On appeal to this Court, Plaintiff raises two issues for review: (1) whether the trial court erred in granting Defendant Lewis a non-suit, and (2) whether the trial court abused its discretion in ruling that evidence of post-accident changes made to the intersection by Defendant DOT was inadmissible.

---

[2] "[T]he proper, procedural course to pursue in perfecting an appeal from [a] jury verdict is to reduce the verdict to judgment and take an appeal therefrom and not from an order denying post-trial motions." *Crosby v. Department of Transportation*, 548 A.2d 281, 283 (Pa. Super. 1988). Technically, an "[a]ppeal lies from the judgment entered and not the denial of post-trial motions," *id.*, and a "verdict did not become final for purposes of appeal until properly reduced to and entered as a formal judgment under Pa.R.C.P. [No.] 227.4." *Crystal Lake Camps v. Alford*, 923 A.2d 482, 488 (Pa. Super. 2007).

[3] After judgment was formally entered on the docket, on May 16, 2017, Defendant Milburn filed a petition to strike/vacate or open the judgment, requesting that a new judgment be entered that marks the matter settled as to her and entering judgment in favor of Defendants Lewis and DOT. On August 3, 2017, the trial court denied this petition, and Defendant Milburn filed an appeal to this Court, which is the subject matter of *Mitchell v. Milburn* (Pa. Cmwlth., No. 1261 C.D. 2017, filed December 6, 2018). *See supra* note 1.

"When reviewing a trial court's denial of a motion for post-trial relief, our scope of review is limited to a determination of whether the trial court abused its discretion or committed an error of law." *Logans' Reserve Homeowners' Association v. McCabe*, 152 A.3d 1094, 1103 (Pa. Cmwlth. 2017).

In her first issue, Plaintiff argues that the trial court erred in granting Defendant Lewis a non-suit because Defendant Lewis had seen Plaintiff's vehicle with an activated turn signal and waiting to turn left, yet he continued to maintain or increase his speed while arriving at the intersection. According to Plaintiff, the issue of whether or not Defendant Lewis acted reasonably under the circumstances is one that should have been left to the jury to decide.

A motion for compulsory non-suit allows a defendant to test the sufficiency of a plaintiff's evidence and may be entered only in cases where it is clear that the plaintiff has not established a cause of action. *Kramer v. Port Authority of Allegheny County*, 876 A.2d 487, 493 (Pa. Cmwlth. 2005). In making this determination, the plaintiff must be given the benefit of all evidence favorable to her, together with all reasonable inferences of fact arising therefrom, and any conflict in the evidence must be resolved in her favor. *Id.* A judgment of non-suit is properly entered if a plaintiff has not introduced sufficient evidence to establish the elements necessary to maintain an action, and it is the duty of the trial court, prior to sending the case to a jury, to determine whether or not the plaintiff has met this burden. *Id.* at 493-94.

As observed by the Superior Court, our Supreme Court first recognized the sudden emergency doctrine in 1854. *Drew v. Work*, 95 A.3d 324, 333 (Pa. Super. 2014); *Papandrea v. Hartman*, 507 A.2d 822, 825 n.2 (Pa. Super. 1986) (citing *Railroad Company v. Aspell*, 23 Pa. 147 (1854)). The sudden emergency doctrine is

an absolute defense to an allegation of negligence and is available to any defendant who suddenly and unexpectedly finds himself confronted with a perilous situation that permits no opportunity to assess the danger and respond appropriately. *Cannon v. Tabor*, 642 A.2d 1108, 1112 (Pa. Super. 1994); *McKee v. Evans*, 551 A.2d 260, 272 (Pa. Super. 1988) (en banc). The doctrine is applicable where a defendant establishes that he did not create the emergency and reacted in a reasonable fashion, for the law recognizes that an individual encountering peril simply is not expected to exercise the same degree of care that is mandated by normal and foreseeable circumstances. *Cannon*, 642 A.2d at 1112. As our Supreme Court explained:

> The sudden emergency doctrine is frequently employed in motor vehicle accident cases wherein a driver was confronted with a perilous situation requiring a quick response in order to avoid a collision. The rule provides generally, that an individual will not be held to the 'usual degree of care' or be required to exercise his or her 'best judgment' when confronted with a sudden and unexpected position of peril created in whole or in part by someone other than the person claiming protection under the doctrine. The rule recognizes that a driver who, although driving in a prudent manner, is confronted with a sudden or unexpected event which leaves little or no time to apprehend a situation and act accordingly should not be subject to liability simply because another perhaps more prudent course of action was available.

*Levey v. DeNardo*, 725 A.2d 733, 735 (Pa. 1999) (internal citation omitted).

Under this well-developed and longstanding legal precept, a sudden and clear emergency may be caused by "the sudden swerving of other vehicles," *Drew*, 95 A.3d at 335, or "moving instrumentalities thrust into a driver's path of travel." *Papandrea*, 507 A.2d 826. Significantly, for the doctrine to apply, "the approaching driver need not anticipate the negligence of the other driver." *Fleishman v. Reading*, 130 A.2d 429, 431 (Pa. 1957); *Unangst v. Whitehouse*, 344 A.2d 695, 699 (Pa. Super.

6

1975). "It is important to recognize, however, that a person cannot avail himself of the protection of this doctrine if that person was himself driving carelessly or recklessly." *Levey*, 725 A.2d at 736.

In its Pa.R.A.P. 1925(a) opinion, the trial court provided a comprehensive and commendable evaluation of the evidence presented at trial and the pertinent case law. In sum, given the precipitous and startling nature of the events surrounding and comprising the accident, the evidence, even when viewed in the light most favorable to Plaintiff, was insufficient to support a jury finding that Defendant Lewis breached his duty of care. (Trial court op. at 4-20.) For instance, the evidence demonstrated that at the time of the accident, Defendant Lewis was traveling between 40 to 50 miles per hour, which was within the posted speed limit, while traveling slightly downhill on a straight roadway. (Trial court op. at 7.) In her case-in-chief, Plaintiff was unable to describe the manner in which Defendant Lewis operated his vehicle. Likewise, her expert did not offer any testimony regarding the operation of Defendant Lewis' vehicle, and he failed to render an opinion that Defendant Lewis' actions contributed to the accident. *Id.* at 6, 10-12. For his defense, Defendant Lewis testified that he was driving down Skippack Pike, "heard a loud bang," and "simultaneously with the bang," saw "a car on its roof coming right at [him]." *Id.* at 8. He said, perhaps fittingly: "It was like out of a movie." *Id.* Defendant Lewis further stated that Plaintiff's vehicle was propelled into his "direct path"; he "hit the brakes as soon as [Plaintiff's] car starting coming at [him] within a split second"; and that he "tried to stop, but [] couldn't." *Id.* at 6, 8.

Based on this record, there are no genuine issues of material fact or conflicts in the evidence for the jury to resolve. Instead, the uncontroverted evidence established the existence of a sudden emergency as a matter of law, and there is no

evidence from which a reasonable jury could find or infer that Defendant Lewis had sufficient time to stop his vehicle, drove at an unsafe or inappropriate speed, or otherwise acted negligently in operating his vehicle. As such, although the facts of this case are relatively unique, they evince a situation that is analogous to the factual patterns in other cases where the courts have concluded that the driver was confronted with a sudden and unexpected emergency and, therefore, did not breach a legal duty in failing to avoid the accident. *See Fleischman*, 130 A.2d at 431 ("When a driver approaches the crest of a hill . . . he can reasonably be assured that no one will be insane enough to approach the crest of the road from the other side of the summit, using the contrary lane of travel. If such a predicament should develop and a collision result, the motorist on his own side of the thoroughfare cannot be declared guilty of contributory negligence as a matter of law."); *Long v. Pennsylvania Truck Lines*, 5 A.2d 224, 225 (Pa. 1939) ("Appellant was not under a duty to anticipate that the driver of a vehicle coming in the opposite direction around the curve would occupy the center of the highway in violation of the law of the road."); *Drew*, 95 A.3d at 335 (concluding that a vehicle changing lanes directly in front of a motorist qualified as sudden emergency where the evidence, if credited, would "establish that the initial leftward movement of [the defendant's] vehicle unexpectedly presented [the plaintiff] with a perilous situation that permitted [the plaintiff] little or no time to rationally contemplate a response."); *see also Greene v. Morelli Brothers*, 463 F.2d 725, 729 (3d Cir. 1972) ("This evidence affords but one conclusion, and that is that [the defendant] suddenly turned into [the plaintiff's] lane of travel and was hit almost immediately. Even according to [the defendant], split-second timing was involved. In any event, the record does not afford a reasonable conclusion that [the plaintiff] had, if he were attentive and driving at a lawful rate of speed, the necessary time to

avoid the collision. Such a conclusion could only be the result of conjecture."); *cf. Kline v. Kachmar*, 61 A.2d 825, 828 (Pa. 1948) ("Even if the [defendant's] truck at the time was somewhere on College Street, [the plaintiff] was under no obligation to look all the way down the street to ascertain whether or not some motorist was coming at a reckless rate of speed that would carry him across the intersection.").

In Pennsylvania, it is well-settled that "[t]he mere happening of an accident is no evidence of negligence" and "conduct is negligent only if the harmful consequences thereof could reasonably have been foreseen and prevented." *Butler v. City of Pittsburgh*, 537 A.2d 112, 114-15 (Pa. Cmwlth. 1988). "The jury may not be permitted to reach its verdict on the basis of speculation or conjecture; there must be evidence upon which its conclusion may be logically based." *Cuthbert v. City of Philadelphia*, 209 A.2d 261, 264 (Pa. 1965); *accord Fitzpatrick v. Natter*, 961 A.2d 1229, 1241-42 (Pa. 2008). Because the record contained insufficient evidence to support a jury finding that Defendant Lewis was negligent, we conclude the trial court did not err in granting Defendant Lewis a non-suit.

In her second issue, Plaintiff contends that the trial court abused its discretion in excluding evidence pertaining to the dedicated, left-hand turn lane that Defendant DOT installed or implemented after the accident. Plaintiff asserts that this evidence was admissible to establish that an alternative and safer design was available and appropriate.

The exclusion of evidence is within the sound discretion of the trial court. *Department of General Services v. United States Mineral Products Co.*, 927 A.2d 717, 731 (Pa. Cmwlth. 2007), *aff'd* 956 A.2d 967 (Pa. 2008). To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party. *Id.* "The exclusion of evidence may not be

grounds for a new trial where the evidence would not have affected the verdict or where other evidence of the same fact was introduced by the party applying for the new trial." *Commonwealth v. Fox*, 328 A.2d 872, 876 (Pa. Cmwlth. 1974).

Pa.R.E. 407 prohibits the admission of subsequent remedial measures except in certain, delineated circumstances. *Blumer v. Ford Motor Co.*, 20 A.3d 1222, 1227 (Pa. Super. 2011). In its entirety, Pa.R.E. 407 states:

> When measures are taken by a party that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible against that party to prove:
>
> • negligence;
> • culpable conduct;
> • a defect in a product or its design; or
> • a need for a warning or instruction.
>
> But the court may admit this evidence for another purpose such as impeachment or—if disputed—proving ownership, control, or the feasibility of precautionary measures.

Pa.R.E. 407.

In *Duchess v. Langston Corporation*, 769 A.2d 1131, 1142 (Pa. 2001), our Supreme Court explained that Pa.R.E. 407 is consistent with "the common law doctrine precluding the use of evidence of subsequent remedial measures to prove fault or negligence," *id.* at 1137, and determined that the rule "extends to preclude use of a subsequent design change as substantive evidence of a product defect in a strict products liability case." *Id.* at 1147. The Supreme Court cited the two "traditional justifications" for the rule, that is, "the exclusion of evidence that lacks relevance, and the promotion of salutary social policy objectives." *Id.* at 1137. With regard to the first point, the Supreme Court stated that "[s]ince the employment of a subsequent remedial measure by definition occurs in a different time frame, the

10

evidence is said to be of diminished relevance," *id.* at 1140, in proving negligence or a product's defect; this is primarily because "it applies to conduct before an accident a standard of duty determined by after-acquired knowledge." *Id.* at 1137 n.7. On the latter point, the Supreme Court declared that "the aim is to encourage measures that further necessary or added safety, or at least to avoid discouraging such measures, by removing the concern that they will be employed adversely in an action at law," *id.* at 1137; in other words, admission of the subsequent remedial measure would discourage manufacturers and the like from continuing to update and improve upon the safety features of their products and instrumentalities after their initial manufacture or implementation. *See id.*

Here, as previously mentioned, Plaintiff's proffered evidence discussed and depicted the dedicated left-turn lane that Defendant DOT installed in the eastbound lane on Skippack Pike subsequent to the accident. In its Pa.R.A.P. 1925(a) opinion, the trial court addressed and resolved Plaintiff's evidentiary issue in an apt and able manner, concluding that, pursuant to the plain language of Pa.R.E. 407, Plaintiff's proposed evidence was inadmissible to demonstrate that Defendant DOT acted negligently or that Skippack Road was defective in that it required a traffic control, warning device, or a new design. (Trial court op. at 20-24.)[4] We find no error in the trial court's evidentiary ruling.

---

[4] In her brief, Plaintiff places heavy reliance on *Wenger v. West Pennsboro Township*, 868 A.2d 638 (Pa. Cmwlth. 2005), but that case is inapposite. In *Wenger*, this Court held that facts contained within a post-accident engineering study performed by the township's engineer was not a remedial measure as "the whole purpose of [the] investigation was to determine whether remedial measures were warranted." *Id.* at 644. As such, we concluded that the facts in the engineering study could be used by the plaintiff's expert to support his opinion that a proposed traffic device was an appropriate measure that the defendant could have employed to prevent the accident. However, in *Wenger*, the plaintiff did not seek to introduce evidence showing that the defendant did, in fact, install the traffic device after the accident, which would have been evidence of a **(Footnote continued on next page…)**

11

Nonetheless, Plaintiff contends that she offered to introduce this evidence, not to prove negligence, but to establish feasibility or control. However, as noted by the trial court, Defendant DOT conceded control and feasibility at trial. (Trial court op. at 21-22.) Because the issues of control and feasibility were never "disputed," Pa.R.E. 407, or otherwise contested by Defendant DOT, we conclude that the trial court did not err in ruling that Plaintiff could not submit the proffered evidence for these limited purposes. This aspect of the trial court's evidentiary ruling finds strong support in our case law.

For example, in *Mendenhall v. Department of Transportation*, 537 A.2d 951 (Pa. Cmwlth. 1988), the plaintiffs attempted to introduce evidence that, after the accident, DOT placed an advisory speed plate on a "Curve Ahead" sign before the curve and also placed a large arrow sign in the curve. The plaintiffs asserted that they offered this evidence not to prove negligence by DOT, but rather, to establish the availability of an affordable and feasible remedy to improve the safety of the curve consistent with the recommendations of their expert. On appeal, this Court concluded that since DOT "made no effort to dispute" the matters, "there simply was no issue of feasibility or affordability of different signs at the curve"; consequently, "the plaintiffs' proffered evidence did not relate to any material fact in issue, and hence was irrelevant" and inadmissible. *Id.* at 956. We further added that, in these circumstances, "the only use the jury could have made of the proffered evidence would have been to impute antecedent evidence, to the prejudice of [DOT]." *Id.*; *see Haas v. Department of Transportation*, 536 A.2d 865, 867 (Pa. Cmwlth. 1988)

_____

**(continued…)**

subsequent remedial measure barred by Pa.R.E. 407. In this case, by contrast, Plaintiff attempted to introduce such evidence.

(rejecting the plaintiff's argument that evidence that DOT erected a sign within one year of the accident was admissible to prove that it was feasible to erect such a sign "because feasibility was not an issue raised by DOT"). Therefore, we conclude that the trial court did not abuse its discretion in excluding Plaintiff's proposed evidence concerning the changes that Defendant DOT made to the intersection after the accident.[5]

For the above-stated reasons, the Court concludes that the two issues that Plaintiff raises on appeal lack merit and fail to establish that the trial court abused its discretion or committed an error of law in granting Defendant Lewis a non-suit and

---

[5] In any event, the trial court permitted Plaintiff's expert to testify that a dedicated left-turn lane was not in place at the intersection at the time of the accident; Skippack Pike could accommodate a dedicated left-turn lane without changes to the road's configuration; it would have been feasible and appropriate for Defendant DOT to create a dedicated left-turn lane by re-striping Skippack Pike; and that if a dedicated left-turn had been implemented by Defendant DOT prior to the accident, the measure could have prevented the accident. (Trial court op. at 22-23.) Consequently, notwithstanding the trial court's ruling that evidence reflecting the subsequent remedial measures was inadmissible, Plaintiff was able to introduce other evidence to demonstrate the facts that she sought to submit to the jury, including proof that Defendant DOT had authority and control over Skippack Pike and the intersection, it was practical and viable for Defendant DOT to construct a dedicated left-turn, and Defendant DOT acted negligently in failing to do so. *See id.*

Hence, with the exception of offering evidence that displayed the subsequent remedial measure itself, Plaintiff admitted evidence at trial that was duplicative and cumulative of her proffered but excluded evidence. In this context, if the trial court committed any evidentiary error (which we conclude it did not), the error would have been harmless and not one which would require a new trial. *See Hass*, 536 A.2d at 866-67 (concluding that even though the trial court properly refused to admit evidence that DOT had posted a warning sign after the accident, the plaintiffs nonetheless introduced evidence that DOT was negligent in failing to erect a warning sign and witnesses testified that no warning sign existed at the time of the accident; therefore, the plaintiffs would not be entitled to a new trial because the exclusion of evidence may not be grounds for a new trial where other evidence of the same fact was introduced by the party seeking a new trial); *see also Commonwealth v. Hawkins*, 701 A.2d 492, 508 (Pa. 1997).

ruling that evidence of subsequent remedial measure undertaken by Defendant DOT was inadmissible.  Accordingly, we affirm the judgment.

_____
PATRICIA A. McCULLOUGH, Judge

Judge Cohn Jubelirer did not participate in this decision.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Blair S. Mitchell,                  :
              Appellant        :
                                  :   No. 344 C.D. 2017
           v.                 :
                                  :
Michelle M. Milburn and James V.    :
Lewis and Commonwealth of        :
Pennsylvania, Department of        :
Transportation                        :

## ***ORDER***

AND NOW, this 6th day of December, 2018, the judgment entered on May 1, 2017, in the Court of Common Pleas of Montgomery County is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge