# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jennifer Doyle,                          :
                         Appellant       :
                                         :
                                         :
            v.                           : No. 289 C.D. 2024
                                         : Argued: June 3, 2025
Alejandro Muniz-Nieves                   :
                                         :
            v.                           :
                                         :
D&M Esposito Family Farm,                :
Dominic Esposito and                     :
Commonwealth of Pennsylvania             :
Department of Conservation               :
and Natural Resources,                   :
Bureau of State Parks                    :


BEFORE:    HONORABLE ANNE E. COVEY, Judge
           HONORABLE LORI A. DUMAS, Judge
           HONORABLE STACY WALLACE, Judge


OPINION
BY JUDGE WALLACE                              FILED: July 8, 2025


Jennifer Doyle (Doyle) appeals the February 13, 2024 nonsuit entered against her and in favor of the Commonwealth of Pennsylvania Department of Conservation and Natural Resources, Bureau of State Parks (Department), as memorialized by the trial worksheet filed February 22, 2024, by the Honorable Christopher R. Hall of the Court of Common Pleas of Philadelphia County (trial court). Doyle argues on appeal that the trial court erred in concluding the doctrine of sovereign immunity and statutory provisions known as the Recreational Use of Land and Water Act

(Recreational Use Act)[1] barred her negligence claim against the Department. After careful review, we affirm.

## BACKGROUND

The essential facts of this matter are undisputed. On October 23, 2020, Doyle and her cousin took their dogs for a walk at Benjamin Rush State Park (Park), which is a public park operated by the Department in Northeast Philadelphia. Trial Ct. Op., 5/20/24, at 1, 6. As Doyle and her group walked on a trail, they encountered a rider on horseback. *Id.* Doyle's dog broke away[2] and attacked the horse. *Id.* Doyle went after her dog and attempted to retrieve him. *Id.* When Doyle approached the horse to retrieve her dog, the horse kicked her in the face and inflicted severe injuries. *Id.* at 1, 6-7.

The Park is 315 acres and features 3.5 miles of trails. Trial Ct. Op., 5/20/24, at 6; R.R. at 291a. The Department posted rules and regulations at the Park on two bulletin boards, providing that horseback riding was permitted on the right berm of roads open to public vehicles and on designated trails and areas. *Id.* at 8. However, there were no trails or other areas designated for horseback riding at the Park. *Id.* The Park included barriers intended to keep motor vehicles off the trails but did not include barriers specific to horseback riders. *See id.* at 8-9.

Doyle filed a praecipe for writ of summons on December 21, 2020, followed by a complaint on June 30, 2021. Initially, Doyle named only the horseback rider, Alejandro Muniz-Nieves, as a defendant. She then filed a joinder complaint on July 27, 2021, adding D&M Esposito Family Farm, which boarded the horse that kicked

---

[1] Act of February 2, 1966, P.L. (1965) 1860, *as amended*, 68 P.S. §§ 477-1 - 477-9.

[2] Doyle testified her dog was on a leash at the time, and she could not remember whether the leash "came out of my hand or . . . came off of [the dog's] collar." Reproduced Record (R.R.) at 124a.

2

her; Dominic Esposito, owner of D&M Esposito Family Farm; and the Department as defendants. Significantly, Doyle alleged the Department was negligent by failing to (1) warn pedestrians about the dangers posed by horseback riding in the Park, (2) provide barriers to keep pedestrians separated from horseback riders, (3) post signs directing horseback riders to remain in separate areas from pedestrians, and (4) take proper precautions to protect pedestrians from the dangers posed by horseback riding in the Park. The Department filed an answer with new matter and new matter cross-claims on October 15, 2022. In relevant part, the Department denied any negligence and maintained it was immune from Doyle's lawsuit under the doctrine of sovereign immunity and the Recreational Use Act. Doyle filed a response to the Department's new matter on November 4, 2021.[3]

The matter proceeded to a jury trial, which began on February 9, 2024.[4] The Department moved for a nonsuit and a directed verdict. On February 13, 2024, the trial court explained it would grant a nonsuit and directed verdict in the Department's favor, reasoning sovereign immunity and the Recreational Use Act barred Doyle's lawsuit.[5] R.R. at 166a-67a. The trial court filed a trial worksheet on February 22, 2024, explaining it granted a nonsuit and a directed verdict in the alternative.

---

[3] The Department later filed a motion for summary judgment asserting sovereign immunity, which the trial court denied.

[4] Doyle obtained a default judgment against Alejandro Muniz-Nieves, and the trial court dismissed the claims against D&M Esposito Family Farm and Dominic Esposito on preliminary objections. Only Doyle's negligence claim against the Department remained at the time of trial.

[5] A trial court may grant a nonsuit at the close of the plaintiff's case and grant a directed verdict at the close of all the evidence. *See* Pennsylvania Rules of Civil Procedure 226(b), 230.1(a)(1), Pa.R.Civ.P. 226(b), 230.1(a)(1). Here, the Department called its only witness during Doyle's case, and the parties rested at the same time. Although it may have been technically more correct for the trial court to grant a directed verdict because it ruled in favor of the Department at the close of **(Footnote continued on next page…)**

On February 23, 2024, Doyle filed a motion for post-trial relief seeking a new trial. Doyle contended the trial court erred by entering a nonsuit or directed verdict on the basis of sovereign immunity and the Recreational Use Act. Nonetheless, on March 12, 2024, before the trial court ruled on the motion for post-trial relief, Doyle filed a notice of appeal. The Department filed a response to Doyle's motion for post-trial relief on March 13, 2024. The trial court denied the motion for post-trial relief as moot in light of Doyle's appeal by order dated March 20, 2024.[6]

## DISCUSSION

A nonsuit is proper only if the plaintiff fails to introduce sufficient evidence to establish the necessary elements of his or her cause of action. *Mitchell v. Milburn*, 199 A.3d 995, 1000 (Pa. Cmwlth. 2018). This Court reviews the entry of a nonsuit to determine whether "liability exists based on the relevant facts and circumstances, with [the plaintiff] receiving the benefit of every reasonable inference and resolving

---

all the evidence, our analysis would be substantively the same in either situation, and treating the trial court's decision as a directed verdict rather than a nonsuit would not change the outcome of this appeal.

[6] Doyle correctly filed a motion for post-trial relief in response to the trial court's entry of nonsuit. *See* Pennsylvania Rule of Civil Procedure 227.1(a)(3), (c)(1), Pa.R.Civ.P. 227.1(a)(3), (c)(1). She should have allowed the trial court to rule on her motion and, if the trial court denied the motion, appealed from the subsequent entry of judgment. *See Mitchell v. Milburn*, 199 A.3d 995, 999 n.2 (Pa. Cmwlth. 2018) (recognizing an appeal lies from the judgment entered after denial of post-trial motions). Further, despite Doyle's premature appeal, the trial court should have ruled on the merits of her motion, rather than denying it as moot. Persuasive authority explains an appeal taken before the denial of post-trial motions and entry of judgment does not deprive a trial court of jurisdiction. *See City of Phila. v. Galdo* (Pa. Cmwlth., Nos. 532 & 537 C.D. 2020, filed Dec. 13, 2021), slip op. at 10-15. Nonetheless, given the trial court's opinion defending its decision on appeal, it is evident the trial court would not grant the post-trial relief Doyle was requesting even if it were to consider her motion on the merits, and directing the trial court to address the merits at this stage would be a poor use of judicial resources. By per curiam Order on May 15, 2025, this Court directed Doyle to praecipe the trial court prothonotary for entry of judgment to perfect her appeal. *See Mitchell*, 199 A.3d at 999 n.2. Doyle complied, filing a praecipe with the trial court prothonotary as directed and filing a copy of the timestamped praecipe in this Court on May 23, 2025.

all evidentiary conflicts in [the plaintiff's] favor." *Green v. Pa. Hosp.*, 123 A.3d 310, 317 (Pa. 2015) (quoting *Scampone v. Highland Park Care Ctr., LLC*, 57 A.3d 582, 595-96 (Pa. 2012)).

## A. Sovereign immunity

We agree with the Department that sovereign immunity bars Doyle's lawsuit. Under Section 8522 of the Judicial Code, 42 Pa.C.S. § 8522, a lawsuit may proceed against a Commonwealth party, such as the Department, when a plaintiff (1) alleges "damages arising out of a negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity" and (2) meets the requirements of an enumerated exception. At issue is the "real estate exception" to sovereign immunity, which provides:

> **(b) Acts which may impose liability.--**The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:
>
> . . . .
>
> **(4) Commonwealth real estate, highways and sidewalks.--**A dangerous condition of Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property, leaseholds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons, and highways under the jurisdiction of a Commonwealth agency, except conditions described in paragraph (5).[7]

42 Pa.C.S. § 8522(b)(4).

---

[7] Section 8522(b)(5) applies only to dangerous conditions of highways and is irrelevant to Doyle's case. *See* 42 Pa.C.S. § 8522(b)(5).

Central to our analysis is the Pennsylvania Supreme Court's decision in *Wise v. Huntingdon County Housing Development Corp.*, 249 A.3d 506 (Pa. 2021). In that matter, Wise filed a lawsuit alleging she tripped and fell because of insufficient outdoor lighting at a public housing complex. *Id.* at 508-09. Wise's contention was not merely that the complex should have had additional lighting but rather that a tree blocked a nearby pole light at the time she fell, which created a dangerous condition on Commonwealth real estate. *Id.* at 508-09, 512. The Supreme Court reversed the grant of summary judgment against Wise. *Id.* at 520. In doing so, it distinguished Wise's claim from prior cases holding that a dangerous condition of Commonwealth real estate "must be an artificial condition or defect of the land itself, as opposed to the absence of such a condition, and . . . must be the cause, or a concurrent cause, of the injury." *Id.* at 514-18. The Supreme Court explained, in relevant part:

> [W]e hold that the claim at issue is sufficient to invoke the real estate exception to sovereign immunity. Specifically, Wise has alleged the existence of a dangerous condition, *i.e.*, insufficient outdoor lighting. In order to meet the exception, that dangerous condition of insufficient outdoor lighting must derive, originate from or have as its source the Commonwealth real estate. Here, in claiming that the insufficient outdoor lighting stems from the existence and position of the pole light and tree in relation to the sidewalk area . . . , Wise has met this requirement. In other words, she has identified a dangerous condition that results from a defect in the property or in its construction, maintenance, repair, or design. Wise further alleges that the dangerous condition of inadequate lighting caused her injuries. . . .
>
> In reaching this conclusion, we are careful to emphasize the precise nature of Wise's claim. It is not simply an assertion of an absence of a condition, . . . which were determined to fall outside of the real estate exception. Rather, Wise alleges that insufficient artificial lighting existed on the Commonwealth realty because of the arrangement of the sidewalk, pole light, and tree, which are part of the real property. Stated differently, Wise alleges the presence of inadequate lighting on the Commonwealth realty, not the absence of lighting altogether. In this respect, Wise's claim is akin to the claim

6

addressed in *Cagey* [*v. Commonwealth*, 179 A.3d 458 (Pa. 2018)], which was based upon the presence of a defective guardrail as part of the Commonwealth realty, rather than the absence of one, and determined to fit within the real estate exception. We likewise hold that, when an agency installs lighting as part of its real estate, sovereign immunity is waived if the agency's negligent installation and design creates a dangerous condition.

*Id.* at 517-18 (citations, footnotes, and quotation marks omitted).

The Supreme Court's decision in *Cagey* is also instructive. That case involved a driver who lost control of her vehicle and struck a guardrail, which pierced the side of the vehicle and injured her. *Cagey*, 179 A.3d at 460-61. The driver alleged the Department of Transportation negligently installed the guardrail because its "'blunt end' or 'boxing glove' terminal end treatment" was dangerous, pierced her vehicle, and inflicted more grievous injuries than she otherwise would have suffered. *Id.* at 464. The Supreme Court concluded this claim fell within the real estate exception to sovereign immunity. *Id.* at 466. Significantly, the Supreme Court distinguished its previous decision in *Dean v. Department of Transportation*, 751 A.2d 1130 (Pa. 2000), where it held the real estate exception did not permit the lawsuit of an injured passenger who contended the Department of Transportation should have installed a guardrail along a highway near a steep embankment:

In *Dean*, we held only that a "dangerous condition of Commonwealth agency real estate" must be an artificial condition or defect of the land itself, as opposed to the absence of such a condition. . . . We have not been asked to overrule *Dean* but we clarify today that our holding in *Dean* is limited to the facts presented there, namely, a circumstance in which [the Department of Transportation] failed to install a guardrail. When [the Department of Transportation] installs a guardrail, sovereign immunity is waived if the agency's negligent installation and design creates a dangerous condition.

*Cagey*, 179 A.3d at 466-67 (footnotes omitted).

7

Here, the trial court discussed *Wise* and concluded Doyle's claim was that the Department should have taken additional steps to keep pedestrians safe from horses, not that existing safety measures at the Park failed to function as designed. Trial Ct. Op., 5/20/24, at 18-20. The trial court reviewed Doyle's allegations and evidence at trial, explaining the substance of her claim was that the Department failed to provide additional notices, signs, and barriers addressing safety issues specific to horses. *Id.* at 19-22. The trial court rebuffed Doyle's argument that the absence of additional notices, signs, and barriers rendered the Park's existing safety measures defective as a "logical artifice" that lacked evidentiary support and would remove any limits from the real estate exception. *Id.* at 20-21.

Doyle contends her claim does not depend on the absence of signs and barriers at the Park but on the deficient design and arrangement of existing signs and barriers. Doyle's Br. at 7, 12-14. Doyle acknowledges the Park had signs stating horses were not allowed on trails but argues that the signs were relegated to two bulletin boards, which were not located near the area where she was injured, and that the type on the signs was too small. *Id.* at 12-13. Doyle suggests the Park's signs may have "fall[en] into disrepair," explaining there was nothing posted on the bulletin board near where her injury occurred. *Id.* at 14. Moreover, Doyle argues the Park's existing gates and bollards were inadequate to prevent horseback riders from entering the trail area. *Id.* at 13.

In her complaint, Doyle alleged the Department had been negligent by failing to (1) warn pedestrians about the dangers posed by horseback riding in the Park, (2) provide barriers to keep pedestrians separated from horseback riders (3) post signs directing horseback riders to remain in separate areas from pedestrians, and (4) take proper precautions to protect pedestrians from the dangers posed by horseback riding

8

in the Park. The allegations in Doyle's complaint focused on the absence of signs and barriers specific to horseback riding at the Park and not the deficient design and arrangement of existing signs and barriers.

Doyle's expert witness at trial, equine scientist J. Timothy Potter, Ph.D., PAS[8] (Dr. Potter), testified via a videotaped deposition. He agreed the Department should have provided signs warning pedestrians on the trails that horses could be present in the area. Potter Dep., 1/04/24, at 1:00:32-1:01:52. Dr. Potter testified there was "no signage" and recommended signs be placed at trailheads in the Park. *Id.* at 1:28:43-1:28:45, 1:50:06-1:50:21. Dr. Potter further agreed the Department did not provide barriers that would have prevented horses from entering particular areas of the Park. *Id.* at 1:07:20-1:07:32. He explained horses can be dangerous because they possess an instinctual "fight or flight" response if threatened, and the public is often unaware of the danger. *Id.* at 1:08:15-1:12:00. This evidence also establishes Doyle's claim depended on the absence, rather than deficient design and arrangement, of signs and barriers.

In this way, Doyle's claim is no different than a claim that the Commonwealth should have installed a guardrail along a dangerous section of highway. *See Cagey*, 179 A.3d at 466-67; *Dean*, 751 A.2d at 1134. Although an additional guardrail may make the highway safer, that does not mean any guardrails or safety features already present on the highway are deficiently arranged or designed so as to bring the claim within the real estate exception to sovereign immunity. Likewise, the fact additional signs and barriers may deter horseback riders from using the Park's trails and make the Park safer for pedestrians does not demonstrate a deficiency in the existing signs and barriers. To conclude otherwise would create an exception swallowing the rule

---

[8] As best we can discern, PAS stands for "Professional Animal Scientist."

our Supreme Court left undisturbed in *Wise* that an "absence of conditions" does not meet the requirements of Section 8522(b)(4) of the Judicial Code. *Wise*, 249 A.2d at 518 n.12.

**B. Recreational Use Act**

Even if sovereign immunity did not apply to Doyle's negligence claim, we conclude the Department would be immune under the Recreational Use Act. The Recreational Use Act provides immunity from negligence claims to landowners who open their land to the public for recreational purposes free of charge. *Stone v. York Haven Power Co.*, 749 A.2d 452, 455 (Pa. 2000). Our Supreme Court has explained immunity is available only for "outdoor recreation on largely unimproved land." *Id.* (quoting *Mills v. Commonwealth*, 633 A.2d 1115, 1117 (Pa. 1993)). In addition, the Recreational Use Act provides an exception "[f]or wilful [sic] or malicious failure to guard or warn against a dangerous condition, use, structure, or activity." Section 6(1) of the Recreational Use Act, 68 P.S. § 477-6(1).

In this case, the trial court concluded the Recreational Use Act barred Doyle's lawsuit because she alleged the Department was merely negligent in her complaint, rather than willful or malicious. Trial Ct. Op., 5/20/24, at 15. The trial court further reasoned Doyle failed to present evidence that the Department was aware horseback riders in the Park would pose a nonobvious danger to a pedestrian walking her dog. *Id.* at 16. The trial court explained signs within the Park stated horseback riding was permitted and, therefore, warned Doyle of potential danger. *Id.* at 15-16. Moreover, Doyle testified she approached the horse that injured her from the side because she realized it was dangerous. *Id.* at 16-17.

Doyle contends the Recreational Use Act does not apply to the Park because it is small, urban, and includes numerous improvements. Doyle's Br. at 7-9. Further,

10

Doyle maintains the Department was aware of the danger horseback riding posed to pedestrians but willfully failed to guard or warn against it. *Id.* at 7, 10. She points to evidence at trial establishing the Department knew of horseback riding in the Park, including the presence of horse manure, an e-mail inquiring about horseback riding, and horseback riders a park ranger observed shortly after her injury. *Id.* at 10. Doyle argues she visited the Park multiple times before her injury but never saw horseback riders and encountered the horse that injured her without warning. *Id.* at 11.

The original record belies Doyle's characterization of the Park as small, urban, and developed. Despite its location in Northeast Philadelphia, the Park is 315 acres and features only minimal improvements, such as parking lots, trails, and a bathroom facility. R.R. at 291a-92a. Photographs show the trail area where Doyle was injured included benches and was near a road and parking lot but was generally surrounded by open fields, trees, and brush. *Id.* at 217a-30a. In *Pagnotti v. Lancaster Township*, 751 A.2d 1226, 1227 (Pa. Cmwlth. 2000), this Court concluded the Recreational Use Act provided immunity after a boy "slipped from, or swam over, a low head dam" and drowned in a creek at a 7.7-acre park with improvements including a community building, pavilion, "old mill," and path for walking and bicycling. We explained the following factors are relevant to whether the Recreational Use Act applies:

> (1) the nature of the area in question, that is, whether it is urban or rural, indoor or outdoor, large or small; (2) the type of recreation offered in the area, that is, whether persons enter to participate in one of the recreational purposes listed in [S]ection 2(3) of the [Recreational Use Act[9]]; (3) the extent of the area's development, that is, whether the site

---

[9] Section 2(3) of the Recreational Use Act defines a "Recreational purpose" as:

> any activity undertaken or viewed for exercise, sport, education, recreation, relaxation or pleasure [including, but] not limited to, any of the following, or any combination thereof: hunting, fishing, swimming, boating, recreational

**(Footnote continued on next page…)**

11

is completely developed and/or significantly altered from its natural state; and (4) the character of the area's development, that is, whether the area has been adapted for a new recreational purpose or, instead, would be amenable to the enumerated recreational purposes of the [Recreational Use Act] even without alteration. We also deem it appropriate to consider any unique facts as additional factors where doing so would advance the purpose of the [Recreational Use Act].

*Id.* at 1233-34 (footnote omitted). Consideration of these factors supports applying the Recreational Use Act to the Park and specific trail area where Doyle was injured[10] because of their large size, outdoor recreational uses, and minimal improvements.

It is important to add that the General Assembly amended Section 2(1) of the Recreational Use Act, 68 P.S. § 477-2(1), in 2018 to include "paths, [and] paved or unpaved trails" in the definition of "Land" for purposes of immunity. Act of October 24, 2018, P.L. 671. This unequivocally indicates the General Assembly's intent to include the minimally improved recreational trail on which Doyle was injured within the Recreational Use Act. Even before the amendment, Section 2(1) defined "Land" to include "buildings" and "structures." *Id.* Our Supreme Court has recognized the Recreational Use Act applies "to ancillary structures attached to open space lands."

_____

noncommercial aircraft operations or recreational noncommercial ultralight operations on private airstrips, camping, picnicking, hiking, pleasure driving, snowmobiling, all-terrain vehicle and motorcycle riding, nature study, water skiing, water sports, cave exploration and viewing or enjoying historical, archaeological, scenic, or scientific sites.

68 P.S. § 477-2(3).

[10] In *Pagnotti*, we considered the property as a whole and agreed "that whether the application of the multi-factor test involves the entire piece of property or only the section upon which the plaintiff sustained the injury should be determined on a case by case basis, using the intended purpose of the [Recreational Use Act] to guide the determination." 751 A.2d at 1234 n.15; *but see Bashioum v. Cnty. of Westmoreland*, 747 A.2d 441, 446 ("Generally, our courts have focused on the specific area which caused the injury to determine whether [Recreational Use Act] is applicable or not."). Whether considering the property in this case as the Park or the specific trail area where Doyle was injured, we conclude the Recreational Use Act applies.

12

*Rivera v. Phila. Theological Seminary of St. Charles Borromeo, Inc.*, 507 A.2d 1, 8 (Pa. 1986).

Moreover, we agree with the trial court that Doyle did not specifically allege willful or malicious failure to guard or warn against the dangers posed by horseback riding in her complaint and did not present evidence of willful or malicious failure to guard or warn at trial. The evidence on which Doyle relies shows the Department was aware of horse manure on the road, where horses were permitted to be, and told a single person who inquired via e-mail that she could not go horseback riding at the Park. R.R. at 99a-101a. Former Chief Ranger Supervisor, Zachary Snyder, testified that before Doyle's injury he "had never encountered a horse in the [P]ark," but that he spoke with horseback riders in the Park shortly after Doyle's injury and informed them they could not use the trails. *Id.* at 109a. The original record does not support the inference that the Department was aware of horseback riding on the trails before Doyle's injury or of any danger to pedestrians on the trails. *See Jones v. Cheltenham Twp.*, 543 A.2d 1258, 1260 (Pa. Cmwlth. 1988) (concluding the plaintiff failed to plead willfulness under the Recreational Use Act where there was no averment that the defendant had actual knowledge of, or "deliberately, intentionally or knowingly failed to guard or warn against," a dangerous condition).

## CONCLUSION

Even giving Doyle the benefit of every reasonable inference and resolving all evidentiary conflicts in her favor, she has not introduced sufficient evidence to meet the requirements of the real estate exception to sovereign immunity, which requires "an artificial condition or defect of the land itself, as opposed to the absence of such a condition." *Wise*, 249 A.2d at 517. We further conclude that the Department is also immune from Doyle's lawsuit under the Recreational Use Act as the owner of

largely unimproved land open to the public for recreational purposes free of charge. Therefore, we affirm the trial court's entry of nonsuit against Doyle and in favor of the Department.

 

_____

STACY WALLACE, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jennifer Doyle,                                      :
                              Appellant              :
                                                     :
          v.                                         : No. 289 C.D. 2024
                                                     :
Alejandro Muniz-Nieves                               :
                                                     :
          v.                                         :
                                                     :
D&M Esposito Family Farm,                             :
Dominic Esposito and                                 :
Commonwealth of Pennsylvania                         :
Department of Conservation                           :
and Natural Resources,                               :
Bureau of State Parks                                :


# **O R D E R**


**AND NOW**, this 8th day of July 2025, the February 13, 2024 nonsuit entered by the Court of Common Pleas of Philadelphia County, as memorialized by the trial worksheet filed February 22, 2024, is **AFFIRMED**.


_____
STACY WALLACE, Judge